614 P.2d 420
**Bill HODGE, Plaintiff-Respondent,**

v.

**Louise A. GARRETT, Rex E. Voeller, Stanley C. Voeller, Helen Voeller Cronin, Lillian M. Voeller and Irvin G. Harris, aka I. G. Harris, individually and doing business as Pay-Ont Drive-In Theatre, a partnership, Defendants-Appellants.**

**No. 12964.**

Supreme Court of Idaho.

July 24, 1980.

**398**

John K. Gatchel of Gatchel & Batt, Payette, for defendant-appellant Rex E. Voeller.

Richard Smith of Parsons, Smith & Pedersen, Burley, for defendants-appellants Louise A. Garrett, Stanley C. Voeller, Helen Voeller Cronin, Lillian M. Voeller and Irvin G. Harris.

Gerald L. Weston of Gigray, Miller, Downen & Weston, Caldwell, for plaintiff-respondent.

BISTLINE, Justice.

Following a non-jury trial the court below granted specific performance to the plaintiff-respondent Bill Hodge.[1] All defendants joined in a single notice of appeal, and all defendants joined in a single brief filed in this Court. Only Mr. Gatchel argued.

Hodge and defendant-appellant Rex E. Voeller, the managing partner of the Pay-Ont Drive-In Theatre, signed a contract for the sale of a small parcel of land belonging to the partnership. That parcel, although adjacent to the theater, was not used in theater operations except insofar as the east 20 feet were necessary for the operation of the theater's driveway.[2] The agreement for the sale of land stated that it was between Hodge and the Pay-Ont Drive-In Theatre, a partnership. Voeller signed the agreement for the partnership, and written changes as to the footage and price were initialed by Voeller.

Voeller testified that he had told Hodge prior to signing that Hodge would have to present him with a plat plan which would have to be approved by the partners before the property could be sold. Hodge denied that a plat plan had ever been mentioned to him, and he testified that Voeller did not tell him that the approval of the other partners was needed until after the contract was signed. Hodge also testified that he offered to pay Voeller the full purchase price when he signed the contract, but Voeller told him that that was not necessary.

The trial court found that Voeller had actual and apparent authority to execute the contract on behalf of the partnership,

---

1. Hodge alleged an alternative count for damages for breach of contract. At the close of Hodge's case in chief the court ordered that that count was not sustained and would be dismissed. A specific written finding that no damages had been proved was entered. On his appeal Hodge has presented no contention that the trial court erred in ruling out his alternative count, or in entering the specific finding that no

damages were established. Presumably the plaintiff did not pursue that count at trial, and, no error being assigned here, that issue is given no consideration.

2. The trial court found that Hodge and Voeller had orally agreed that this 20 foot strip would be encumbered by an easement for ingress and egress to the partnership lands.

and that the contract should be specifically enforced. The partners of the Pay-Ont Drive-In Theatre appeal, arguing that Voeller did not have authority to sell the property [3] and that Hodge knew that he did not have that authority.

At common law one partner could not, "without the concurrence of his copartners, convey away the real estate of the partnership, bind his partners by a deed, or transfer the title and interest of his copartners in the firm real estate." 60 Am.Jur.2d *Partnership* § 149 (1972) (footnotes omitted). This rule was changed by the adoption of the Uniform Partnership Act. The relevant provisions are currently embodied in I.C. §§ 53–309(1) and 53–310(1) as follows:

I.C. § 53–310(1): "Where title to real property is in the partnership name, any partner may convey title to such property by a conveyance executed in the partnership name; but the partnership may recover such property unless the partner's act binds the partnership under the provisions of paragraph 1 of section 53–309, unless such property has been conveyed by the grantee or a person claiming through such grantee to a holder for value without knowledge that the partner, in making the conveyance, has exceeded his authority."

I.C. § 53–309(1): "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

The meaning of these provisions was stated in one text as follows:

"If record title is in the partnership and a partner conveys in the partnership name, legal title passes. But the partnership may recover the property (except from a bona fide purchaser from the grantee) if it can show (A) that the conveying partner was not apparently carrying on business in the usual way or (B) that he had in fact no authority and the grantee had knowledge of that fact. The burden of proof with respect to authority is thus on the partnership." Crane and Bromburg on Partnership § 50A (1968) (footnotes omitted).

Thus this contract is enforceable if Voeller had the actual authority to sell the property, or, even if Voeller did not have such authority, the contract is still enforceable if the sale was in the usual way of carrying on the business and Hodge did not know that Voeller did not have this authority.

As to the question of actual authority, such authority must affirmatively appear, "for the authority of one partner to make and acknowledge a deed for the firm will not be presumed . . . ." 60 Am.Jur.2d *Partnership* § 151 (1972). Although such authority may be implied from the nature of the business, *id.*, or from similar past transactions, *Smith v. Dixon*, 386 S.W.2d 244 (Ark. 1965), nothing in the record in this case indicates that Voeller had express or implied authority to sell real property belonging to the partnership. There is no evidence that Voeller had sold property belonging to the partnership in the past, and obviously the partnership was not engaged in the business of buying and selling real estate.

The next question, since actual authority has not been shown, is whether Voeller was conducting the partnership business in the

---

**3.** The other partners have maintained from the inception of this controversy that Voeller did not have authority to sell this property. In their answer to the complaint, the other partners brought a cross-claim against Voeller for any loss or damage suffered by them as a result of this suit, alleging that Voeller "had no right or authority to commit said real property or deal with the same on behalf of" the other partners. The trial court concluded that this cross-claim should be dismissed.

usual way in selling this parcel of land [4] such that the contract is binding under I.C. §§ 53–310(1) and 309(1), *i. e.*, whether Voeller had apparent authority. Here the evidence showed, and the trial court found:

## III.

"That the defendant, Rex E. Voeller, was one of the original partners of the Pay-Ont Drive-In Theatre; that the other defendants obtained their partnership interest by inheritance upon the death of other original partners; that upon the death of a partner the partnership affairs were not wound up, but instead, the partnership merely continued as before, with the heirs of the deceased partner owning their proportionate share of the partnership interest.

## IV.

"That at the inception of the partnership, and at all times thereafter, Rex E. Voeller was the exclusive, managing partner of the partnership and had the full authority to make all decisions pertaining to the partnership affairs, including paying the bills, preparing profit and loss statements, income tax returns and the ordering of any goods or services necessary to the operation of the business."

The court made no finding that it was customary for Voeller to sell real property, or even personal property, belonging to the partnership. Nor was there any evidence to this effect. Nor did the court discuss whether it was in the usual course of business for the managing partner of a theater to sell real property. Yet the trial court found that Voeller had apparent authority to sell the property. From this it must be inferred that the trial court believed it to be in the usual course of business for a partner who has exclusive control of the partnership business to sell real property belonging to the partnership, where that

property is not being used in the partnership business. We cannot agree with this conclusion. For a theater, "carrying on in the usual way the business of the partnership," I.C. § 53–309(1), means running the operations of the theater; it does not mean selling a parcel of property adjacent to the theater. Here the contract of sale stated that the land belonged to the partnership, and, even if Hodge believed that Voeller as the exclusive manager had authority to transact all business for the firm, Voeller still could not bind the partnership through a unilateral act which was not in the usual business of the partnership. We therefore hold that the trial court erred in holding that this contract was binding on the partnership.

Judgment reversed. Costs to appellant.

DONALDSON, C. J., and BAKES and McFADDEN, JJ., concur.

SHEPARD, Justice, dissenting.

The majority, and I am sure inadvertently, neglects to include certain uncontroverted facts. At the execution of the contract in question here, $100.00 changed hands. It has not been returned and the partnership evidently feels no compunction in retaining it. Some considerable time elapsed between the signing of the instrument and the decision of Voeller not to honor the contract on behalf of the partnership. During that period of time, Hodge was placed in possession of the property in question, made extensive improvements thereon, including the placement of a commercial office structure thereon which Hodge rented to a third party for the sum of $75.00 per month. While it is true that Hodge's count for damages for breach of the contract was dismissed by the trial court, that action of the trial judge was, in my judgment, undoubtedly the result of his decision to grant specific performance. The majority's reversal with directions to enter judgment for the defendant effectively prevents Hodge

---

4. Since we hold that he was not, we do not need to consider whether Hodge knew that

Voeller did not have authority.

from ever recovering any of his uncontroverted damages resulting from Voeller's breach of the contract.

It should be remembered that Voeller clearly admitted the execution of the contract of sale on behalf of the partnership. Such was not denied by the other partners, who in fact counterclaimed against Voeller for the damages the partnership might sustain by reason of the sale. It is uncontroverted that, as Hodge stated, the property involved has undergone an enormous increase in value since the execution of the contract. Undoubtedly, the trial court viewed the defense protestations of Voeller's lack of authority in that light. Indeed, Voeller testified that the sole reason the transaction was not consummated was that he later came to believe that such a sale would amount to a subdivision of the theatre property and hence result in the partnership property being brought into the city limits with a resultant increase in taxes.

Although the trial court allowed the self-serving testimony of both Voeller and Harris regarding the scope of Voeller's authority, the trial judge was careful to note that he did not consider such testimony to be binding on him. In such ruling, I believe he was correct. Certainly, objection to Voeller's testimony could have been sustained on the basis that he was estopped to deny the authority which he had asserted in writing to the detriment of Hodge. The trial judge may very well have believed that the testimony of both Voeller and Harris was self-serving, improbable, and even perhaps violative of the parole evidence rule. It should be noted that the question might have been resolved by reference to the articles of partnership. The lack of the introduction of those articles or any reference to specific parts thereof may well have led the trial judge to conclude that the defendants had failed to carry their burden of proof regarding the lack of authority in Voeller.

Contrary to the assertions of the majority, the record reveals that the partnership had not too long before the instant transaction sold real estate in Emmett, including the entire theatre business located thereon.

Further, one of the partners testified that the entire land owned by the partnership was not necessary to the business and he might very well consider establishing a drive-in restaurant business thereon.

In my mind, I.C. § 53–309(1) is controlling when it states, "every partner is an agent of the partnership * * * unless the partner so acting has *in fact* no authority to act for the partnership in the particular matter, *and* the person with whom he is dealing has knowledge of the fact that he has no such authority." (Emphasis added.) To me, the inclusion in the statute of the conjunctive *"and"* is contradicted by the "authority" cited by the majority, which converts the conjunctive "and" into the disjunctive "or."

Here, Hodge's testimony, which the trial court was at liberty to believe, was that Hodge had no knowledge but that Voeller had the authority to enter into the transaction on behalf of the partnership. Indeed, Voeller so executed the instrument in the name of the partnership.

I am indeed startled at the following assertion of the majority: " * * * and obviously the partnership was not engaged in the business of buying and selling real estate." The murky and complicated history of the partnership clearly demonstrates to the contrary. As revealed in the record, what had been originally partnership property (such as three theatres in Burley, Idaho) had been somehow converted into corporate assets. The businesses in which Harris and Voeller were involved, in either partnership or corporate form, at various times included theatres in Logan, Utah, Jerome, Idaho, Emmett, Idaho, Burley, Idaho, Rupert, Idaho, Ontario, Oregon, Lovelock, Nevada, Evanston, Wyoming, Montpelier, Idaho, Buhl, Idaho, Carson City, Nevada, Nyssa, Oregon; real estate businesses in Rupert, Idaho, Montpelier, Idaho, Carson City, Nevada, Nyssa, Oregon; and hotel operations in Burley, Idaho and Evanston, Wyoming. Exactly what real estate transactions were involved between the partnership and these various corporations is unclear. However, the record is clear that the

partnership did purchase real property, that the partnership did sell real property, and that Voeller himself, on behalf of the partnership, engaged in the rental of property to other persons, including the leasing of the theatre operation in Lovelock, Nevada. On the basis of the above, I cannot agree with the majority's characterization of this partnership, but again would agree with the trial judge in his undoubted conclusion, albeit unstated, that the partnership failed to carry its burden of proof that the transaction in question here was outside the authority of Voeller and outside the usual and ordinary course of business of the partnership.