636 P.2d 168

**SOUTHERN IDAHO REALTY OF TWIN FALLS, INC.—CENTURY 21, Plaintiff, Counterdefendant and Appellant,**

v.

**LARRY J. HELLHAKE AND ASSOCIATES, INC., and William H. Peters, Defendants, Counterclaimants and Respondents.**

No. 13401.

Supreme Court of Idaho.

Aug. 28, 1981.

Rehearing Denied Nov. 24, 1981.

Jeff Stoker, Gooding, for plaintiff, counterdefendant and appellant.

Wayne G. Crookston, Meridian, Curtis Eaton, Twin Falls, for defendants, counterclaimants and respondents.

DONALDSON, Justice.

The underlying dispute concerns the right to receive a real estate sales commission from the sale of certain real property owned by West Side Farms, a partnership. Plaintiff-appellant is Southern Idaho Realty of Twin Falls, Inc.—Century 21 (Century 21). Defendants-respondents are Larry J. Hellhake and Associates, Inc. (Hellhake) and William J. Peters. Peters worked with Hellhake in setting up the sale of the property; in trade parlance, Peters is a "listing broker" and Hellhake is a "selling broker." West Side Farms is composed of seven partners, one of whom is Donald B. Robertson. Don Robertson also acted as a real estate agent for Century 21 at certain times in the present action.

On October 23, 1978, three of the partners of West Side Farms, including the aforementioned Donald Robertson, signed a listing agreement, entitled "Exclusive Authorization and Right to Sell," with Century 21 for the sale of partnership property. This agreement listed an expiration date of January 23, 1979, and provided for a 6% commission to be paid to Century 21 upon sale of the property within the term. Don Robertson, after signing this agreement as a partner, then signed the agreement as the agent for Century 21.

At some time subsequent to the October 23 listing agreement, respondent Hellhake became aware of the offering for sale of the West Side Farms property and upon locating a potential buyer, contacted Century 21 as regards splitting the sales commission. An agreement was not reached as to

this fee splitting. Subsequently, Thomas Rudy, another partner of West Side Farms and one not a signator to the Century 21 listing agreement, gave respondent Peters a verbal listing to sell the partnership property. Thereafter, Peters and Hellhake collaborated in putting a sale together.

On November 18, 1978, all of the partners of West Side Farms, Don Robertson included, signed an earnest money agreement for the sale of the partnership property. This agreement provided that Hellhake, as broker, would receive the sales commission. On the following December 27, 1978, an "Agreement of Sale" was entered into. Again, all the partners signed and provision was made for payment of the commission to Hellhake. Accordingly, the commission was paid to and retained by respondents.

Century 21 filed suit alleging interference with its rights under the listing agreement. In response to respondents' motion and following a hearing and submission of documents, the district court dismissed Century 21's complaint for failure to state a cause of action upon which relief could be granted. The court basically concluded that Century 21 was estopped to deny the agent status of Don Robertson and that Century 21, through Robertson's subsequent signings of the earnest money agreement and the sales agreement, vitiated the listing agreement and released any rights of Century 21 to the sales commission. Century 21 appeals. On other grounds, we affirm.

 Regardless of the merit in the district court's theory of agency as the basis for its dismissal, we are of the opinion that another theory was present in the case which should have been addressed initially and which is dispositive of the case. It is a well-established rule that where the order of the lower court is correct but entered on a different theory, the order will be affirmed on the correct theory. *Matter of Revello*, 100 Idaho 829, 606 P.2d 933 (1979); *Robison v. Compton*, 97 Idaho 615, 549 P.2d 274 (1976); *City of Weippe v. Yarno*, 96 Idaho 319, 528 P.2d 201 (1974).

I.C. § 53–309, a section of Idaho's uniform partnership law, provides in part:

"Partner agent of partnership as to partnership business.—1. Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

2. An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."

In the instant case, Century 21's amended complaint alleges as a cause of action contract interference, specifically that conduct on the part of respondents "caused a breach of said listing agreement to take place on the part of the Westside Farms partnership." The initial question, therefore, is whether, pursuant to I.C. § 53–309, there existed a valid and binding contract. Without such contract, there can be no interference and the cause of action must fail.

We are guided in this matter by the recent case of *Hodge v. Garrett*, 101 Idaho 397, 614 P.2d 420 (1980), wherein this Court discussed the application of I.C. § 53–309 and the interconnected I.C. § 53–310, and held that a single partner with no actual authority could not bind the whole partnership through a unilateral act which was not in the usual business of the partnership. This Court stated that an affirmative appearance of actual authority or the conducting of partnership business in the usual way would be required before such unilateral act could be considered as binding of the partnership. While the *Hodge* case dealt specifically with a contract of sale of partnership land, and the instant action concerns a listing agreement, the reasoning of *Hodge* is instructive.

Here, as in *Hodge*, the underlying contract is signed by less than all of the partners. In fact, Century 21 in its amended complaint admits that only three partners signed the listing out of four (actually there were seven). Furthermore, Century 21 does not even *allege* that the three had authority to sign for the partnership. The defendant Hellhake, in an affidavit which was before the court at the time of the motion to dismiss, states that the listing was not signed by the partners' wives nor by one of the partners Tom Rudy. Furthermore, he affirmatively states that Tom Rudy had not consented to such listing. The defendants' motion to dismiss (which was treated by the court as a motion for summary judgment)[1] was "based upon the pleadings on file," one of which was the defendants' answer and counterclaim, which stated: "Defendant specifically denies that Westside Farms signed the listing agreement and that those three (signing) partners had authority to sign the listing. . . ." In spite of the fact that the issue of the signing partners' authority was clearly presented to the court by the motion to dismiss (summary judgment), the record is devoid of *any* evidence submitted by Century 21 that the signing partners had such authority. Because of the failure of Century 21 to controvert Hellhake's affidavit, *see* I.R.C.P. 56(e), or to even plead the authority of the partners to sign on behalf of the partnership, there is no dispute in the record as to the lack of signing authority. Where it is apparent from a review of the record that there is no dispute as to a dispositive issue, summary judgment is proper. *Stewart v. Hood Corp.*, 95 Idaho 198, 506 P.2d 95 (1973); *Tofoya v. Fleming*, 94 Idaho 3, 479 P.2d 483 (1971). In the face of this uncontradicted affidavit and the deficiency in the pleadings there is no dispute in the facts.

Simply put, Century 21 alleges as its sole cause of action interference with a contract. Century 21 fails, however, to show that a contract ever existed. To the contrary, the record discloses that the listing agreement was void *ab initio*. There was never a "meeting of the minds" between Century 21 and the whole partnership of Westside Farms either before the signing of the listing agreement or after. Thus, Century 21 has failed to establish the prima facie requirement of the existence of a contract, as must be done with the tort of interference with contract, *Barlow v. International Harvester Company*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974),[2] and Century 21's cause of action must therefore fail.[3] The order of the district court dismissing Century 21's complaint for failure to state a cause of action upon which relief can be granted is therefore affirmed. Costs to respondents. No attorney fees on this appeal.

McFADDEN, BISTLINE and SHEPARD, JJ., concur.

BAKES, Chief Justice, dissenting:

I dissent. First, the majority decides this case on an issue not considered below. Second, the record does not support the

---

1. In treating the motion as a motion for summary judgment, the court specifically noted that it had "considered the pleadings, *affidavits*, memoranda of counsel, and other documents filed herein. . . ." While Hellhake's affidavit was submitted prior to the motion to dismiss, it was clearly considered by the court in granting summary judgment, and all parties were informed well in advance that it would be so considered.

2. *Barlow* provides:

"A prima facie case of the tort [of interference with contract] is established where the plaintiff adduces proof of these elements: (a) the existence of a contract, (b) knowledge of the contract on the part of the defendant, (c) intentional interference causing a breach of the contract, and (d) injury to the plaintiff resulting from the breach." *Id.* (citations omitted).

3. We are not unmindful of this Court's statement in *Barlow, supra*, that with the tort of interference with contract, "[p]rotection is extended against unjustifiable interference with contract even though the contract is voidable or unenforceable in an adversary proceeding." *Id* (citations omitted). However, as was noted in *Barlow, id.*, n. 2, the rule is otherwise with regard to contracts void *ab initio*. *See* W. L. Prosser, Handbook of the Law of Torts § 129, p. 931 (4th ed. 1971). *See also* Annot., 96 A.L.R.3d 1294 (1979).

facts which the majority relies on. Third, the majority ignores the law set out in our previous cases.

## I

The majority disposes of this case by holding that the three partners who signed the initial listing agreement between the partnership and Southern Idaho Realty did not have authority to bind the partnership. A review of the proceedings below will disclose that this issue was not presented to or considered by the trial court.

On January 16, 1979, Century 21 filed its original "Complaint for Declaratory Judgment, Writ of Possession, and Damages." Basically, the complaint asked that the commission be split between Century 21 and the defendants. The complaint was loosely based on either an alleged agreement between the parties or custom and trade in the real estate industry. Also, on January 16, the plaintiff Century 21 succeeded in obtaining a show cause order from the trial judge, directing defendants Hellhake and Peters to appear to show cause why a writ of possession (for one-half of the commission) should not enter. Both Hellhake and Peters responded with motions to dismiss for failure to state a claim. No specific grounds were set forth in the defendants' motions. Hellhake also filed an answer, counterclaim, motion to quash the order to show cause, and an "Affidavit in Support of Motion to Quash Order to Show Cause." It is this affidavit upon which the majority so heavily relies. In addition to the matters alluded to in the majority opinion, Hellhake's affidavit states that it is customary to split the commission fees only where there is an agreement or multiple listing service and, further, that there was no agreement for the fee sharing between Century 21 and Hellhake.

On February 13, 1979, Judge Ward granted the defendants' motions to dismiss for failure to state a claim. Again, no specific grounds were set forth. In his order, Judge Ward granted the plaintiff fifteen days to file an amended complaint.

On or about February 14, 1979, Century 21 filed an amended complaint. In this second complaint, it abandoned its original theories and instead chose to proceed upon a theory of tortious interference with contract, although nowhere in the complaint is it specifically denominated as such. Again, both defendants responded with motions to dismiss for failure to state a claim.[1] Again, neither motion sets forth the specific grounds for dismissal. Century 21 responded by filing Don Robertson's affidavit, denominated as an "Affidavit in Opposition to Motion to Dismiss." The affidavit dealt only with the problem of estoppel raised by Robertson's dual agency status.

The case was argued before Judge Granata on May 21, 1979, and taken under advisement. On May 30, 1979, Judge Granata issued an "Opinion in re Motions to Dismiss by Defendants and Counterclaimant." In that opinion, the judge addressed only the issue of estoppel and Don Robertson's dual agency status. Again, the court did not mention the problem of lack of authority on the part of the three partners signing the initial listing agreement. Nor did the opinion mention anything about summary judgment. It merely granted the defendants' motion to dismiss and further directed counsel for Peters to prepare "an appropriate order."

That "appropriate order" turned out to be a summary judgment signed by the court on June 5, 1979. Insofar as the record reflects, it is the first time that the court indicated it was entering a summary judgment, having considered matters outside the pleadings.[2]

Century 21 appealed that summary judgment, arguing that there exist material issues of fact with respect to the application

---

1. Neither defendant answered the second complaint, however.

2. At oral argument on appeal, Hellhake's and Peters' attorneys argued that it was Century 21's submission of the Robertson affidavit (not Hellhake's affidavit) which required that the motion to dismiss be treated as a motion for summary judgment.

of the trial court's theory of estoppel and Don Robertson's dual agency status. Although the defendants' pleadings filed in response to Century 21's original complaint indicate that the question of the partners' authority was raised, there is nothing in the record which indicates that the issue was presented to the trial court as a basis for defendants' motion to dismiss. To the contrary, the only issue which received any attention in conjunction with the motion to dismiss was the question of Don Robertson's dual agency status. Nothing in the record indicates that Century 21 knew or should have known that it would be called upon to rebut those allegations found in pleadings filed in response to Century 21's initial complaint, then dismissed. Today, Century 21 will find that it changed a motion to dismiss into a summary judgment by filing an affidavit on a single issue, only to have this Court grant summary judgment two years later on an alternative factual ground upon which it submitted no affidavit.

## II

Even assuming for argument's sake that this issue is properly before this Court, there are nonetheless material questions of fact regarding the partners' authority which would preclude issuance of summary judgment. As the cases of *Hodge v. Garrett*, 101 Idaho 397, 614 P.2d 420 (1980) and *Marshall Bros., Inc. v. Geisler*, 99 Idaho 734, 588 P.2d 933 (1978), make clear, the mere fact that less than all of the partners signed the listing agreement does not mean that the signing partners were without authority to bind the partnership. The signing partners may have express, implied, or apparent authority to bind the partnership. Issues concerning an agent's authority must be resolved by the trier of fact. *E. g., Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972). The extent and nature of an agent's authority do not pose questions of law to be decided by this Court, especially on this meager record.

The only evidence to which the majority can point in support of its conclusion is found in Hellhake's affidavit.[3] That affidavit provides absolutely no support for resolving factual issues about the signing partners' authority. Hellhake states that the listing agreement was not signed by all the partners, which is obvious and of absolutely no legal significance in view of prior case law which establishes that less than all the partners may in appropriate cases bind the partnership. *Hodge v. Garrett, supra; Marshall Bros., Inc. v. Geisler, supra.* Hellhake next asserts (on "information and beliefs" and "to my knowledge") that Tom Rudy had not *consented* to the listing agreement. Hesitant to state the obvious while mindful of the fact that the majority has apparently overlooked it, I must point out that Hellhake's bare assertion does not establish that it was based upon "personal knowledge," as required by I.R.C.P. 56(e). While Hellhake could have observed that Tom Rudy had not signed the agreement, his affidavit in no way discloses any basis for his knowing whether Rudy had given his consent to authority, be it implied, express or apparent. I.R.C.P. 56(e) requires that "[s]upporting and opposing affidavits shall be made on *personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.*" (Emphasis added.) If Hellhake attempted to testify in a trial, without a foundation having been laid, that Tom Rudy had not consented to the listing agreement, it would be inadmissible, either as an unsupported opinion, or as hearsay. I.R.C.P. 56(e) precludes the consideration of such an unsupported statement in an affidavit. Consequently, there are no facts in the record to support the majority's new legal theory.

## III

Apart from the fact that the majority is reaching factual issues which it shouldn't and resolving them without support in the

---

**3.** The lack of evidence on this issue should not surprise anyone considering the procedural history of this case as set out in Part I of this dissent.

record, the majority is also incorrect on the law. In *Barlow v. International Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974), this Court stated: "Protection is extended against unjustifiable interference with contracts even though the contract is voidable or unenforceable in an adversary proceeding." The opinion noted, "The rule is otherwise with regard to contracts void *ab initio*." *Id.* at 893, 522 P.2d at 1114, n. 2. The issue in this case, then, is simply whether the listing agreement was void *ab initio* or merely avoidable. A contract is usually void *ab initio* if its subject matter is in some manner opposed to public policy so that the law will not aid in upholding it. *Whitney v. Continental Life & Accident Co.*, 89 Idaho 96, 403 P.2d 573 (1965) (group life insurance policy held void as contrary to Idaho statutes); *Worlton v. Davis*, 73 Idaho 217, 249 P.2d 810 (1952) (contract involving layman's attempt to practice medicine held void). These types of contracts are deemed never to have existed in the eyes of the law.

The same cannot be said of contracts entered into by agents acting in excess of their authority. It is well established, for example, that such contracts can be affirmed and ratified by the principal, *Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972), thus retroactively curing any defect in authority. Indeed, ratification of an unauthorized transaction can be inferred from a failure to repudiate it. Restatement (Second) of Agency § 94 (1958).[4] For example, if indeed Tom Rudy did not consent to the signing of the original listing agreement with Century 21, why didn't he repudiate that agreement or notify Century 21 of the other partners' lack of authority? Instead, it appears that he did the same thing—give an oral listing to Peters on the partnership's behalf, which apparently the partnership later ratified by concluding the sale.

Thus, even applying the law which the majority applies, this agreement was at most only voidable, and thus would properly

be the subject of an interference claim under the *Barlow* case.

"[T]he term *voidable* contract is appropriate if ratification by one of the parties would terminate his power of avoidance and make the contract enforceable against him.... Moreover, action may be necessary in order to prevent the contract from producing the ordinary legal consequences of a contract; often such action in order to be effectual must be taken promptly." Restatement (Second) of Contracts 13, comment e (Tent. Draft 1973) (emphasis added).

For these reasons, I respectfully dissent. In my opinion, factual questions regarding the existence of Robertson's agency relationship with Century 21 preclude entry of summary judgment on that basis, the only ground relied on by the court below. I would reverse the trial court, but permit defendants Peters and Hellhake to again move for summary judgment on other grounds not discussed in the trial court's written opinion.

BISTLINE, Justice, on entry of the Court's Order denying rehearing, issued the following opinion:

Continuing to agree that nothing in the record establishes that a contract between Century 21 and Westside Farms, the partnership, ever existed, I conclude it well to add that even were it assumed that there existed a valid contract, it is not readily seen how it was in any way interfered with. The listing agreement itself, as do most exclusive listing agreements, certainly contemplates that there may be a sale of the property by a party other than Century 21. Section 3 of the agreement provides:

"Compensation to Agent. I hereby agree to compensate agent as follows: (a) 6% of the selling price if the property is sold during the term hereof ... by Agent ... *or through any other person*, or by me ...." (Emphasis added.)

4. The same principle was ably set forth by Peters in his respondent's brief (page 17), wherein he argues that Century 21 was obliged to repudiate Robertson's agency if indeed Rob-

ertson was not acting as an agent for Century 21 in signing the earnest money agreement and sales contract. Here, the issue is on the other foot.

The agreement, *then*, by its terms *clearly* contemplates a sale by a third party. It has always been generally understood—in my circles at least—that parties who sign such agreements bind themselves to pay a commission to the (exclusive) listing agent on any sale of the property, and regardless of who actually finds the buyer. This type of agreement, assuming its validity, does *not* prevent, nor does it intend to prevent, nor has it ever been thought as intending to prevent, the seller from selling through another agent and becoming liable for *two* commissions, should the seller do so. As Chief Judge Sobeloff observed in his dissent in *Horn v. Seth*, 201 Md. 589, 95 A.2d 312 (1953), where Seth, a broker, sued Horn, another broker (both had written listings from Mrs. Bramble, the owner):

> "[r]eal estate brokers . . . will learn with surprise that they expose themselves to liability in damages under such circumstances . . . .

> "Our attention, however, needs to be focused not on the Bramble-Lynch agreement, but on the Brambles' agreement with Seth to pay him commissions when he had performed his service. It is for the alleged interference with the latter agreement that Seth sued Mrs. Horn.

> "As we see it, Seth has proved no case against her and has suffered no damage from her conduct. His right of action against the Brambles, if it arose at all, has remained complete. Mrs. Horn's activities did not weaken Seth's claim against the Brambles. Whatever effect these activities of Mrs. Horn may have had on the oral agreement (if any) between the Brambles and Lynch, they were innocuous as to the agreement between Brambles and Seth.

> "There is no suggestion in the record that the Brambles would be unable to meet any judgment against them for commissions and no proof of special damage. Seth simply declined to sue the property owners for reasons undisclosed by the testimony.[1] If he preferred not to sue them and has allowed limitations to run, this is no fault of Mrs. Horn.

> "*The mere fact that in this case the owners may have deliberately obligated themselves to two brokers, and may be disinclined to pay one of them, is immaterial.* They could have been made to pay Seth, if he procured a customer on their terms, and it is by no means certain that if he had made demand upon the Brambles they would not have paid without suit.

> "Recognizing that Seth cannot maintain a suit if he has suffered no damage, it is suggested in the opinion that his damage consisted in that he was put to the necessity of suing the Brambles. The answer is that there is nothing to indicate that Mrs. Horn advised the Brambles not to pay Seth, or that she even discussed his commisssions with them." *Id.* at 316–17 (Sobeloff, C.J., dissenting) (emphasis added).

I am not aware of anything, either in this particular listing or in the law of agency in general, which *prohibits* a seller from selling through a second agent and thus becoming liable for two commissions. Since Hellhake and Peters did nothing which interfered with Westside Farms' (alleged) contractual relations with Century 21, I simply cannot see how liability arises. In fact, were it not for the sale brought about by the efforts of Peters and Hellhake, Century 21 would not have a claim for any commission from anyone. If the underlying listing agreement were valid, Century 21 would actually have received a benefit resulting to it from the actions of Peters and Hellhake. I find it more than a little ironic that Century 21 is now suing, for tortious interference with contract, the very people who created Century 21's alleged right to receive the benefit of its alleged listing contract with Westside Farms.

1. In the instant case, one need not ponder long to discern why the listing agent, Century 21, might have been reluctant to sue Westside Farms for the commission. Not only had Don Robertson, an agent for Century 21, signed the deed of sale as one of the partner/owners of the farm, but, as noted above, Century 21 had no valid listing agreement with Westside Farms.

It is undisputed that Hellhake was searching for a farm for the Gabiolas *prior* to learning of the fact that Westside Farms was looking for a buyer. Once Hellhake learned of the listing, he contacted Century 21 and attempted to work out a deal to split the commission. Upon Century 21's refusal to cooperate, the sale was consummated and both Hellhake and Peters received a commission for their efforts, but certainly not *the* commission allegedly due to Century 21. To allow Century 21 to maintain this suit against Hellhake and Peters under these circumstances would mean that (1) there is no requirement that listing agents demonstrate a refusal by the seller/obligor to pay the commission owing to the listing agent in an action brought for tortious interference with contract against other agents or buyers; (2) buyers and their agents who purchase from a seller who has previously listed the sale property, and who have knowledge of the listing, expose themselves to liability for interference with contract regardless of the terms of the prior listing, and (3) a listing agent need not seek a remedy against the party who *owes* the commission as a condition precedent to seeking damages from a person alleged to have interfered with the contract, *even though* the listing agent, assuming a valid contract, might succeed in a suit against the seller. As Chief Judge Sobeloff so well expressed it, real estate brokers in Idaho "will learn with surprise" that the courts may take the view that they expose themselves to liability in damages under such commonplace circumstances as were here involved.