[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The above-entitled matter was heard by this Court sitting without a jury and judgment thereon was reserved on March 11, 1992. Pursuant to R.I.G.L. (1985 Reenactment) § 7-12-21(3), plaintiffs Domenic and Rose Guiliano[1] seek to recover property conveyed by defendant, Alessandra Cozzolino, to co-defendants, Ralph and Phyllis Montella.
FACTS
The subject property consists of four (4) lots located in the Town of North Providence and designated as lots numbered twenty-six (26), twenty-seven (27), forty-four (44), and forty-five (45) on the plat entitled "Antonio Plat," recorded on Plat Card No. 86. At the time of the disputed conveyance these lots were located on a paper street and bore no sewers, water, or other utilities and did contain ledge. The adjacent neighborhood was being built up with single family homes, though at the time of the conveyance, there was no access to the property by completed streets. Said four lots originally, for purposes of the instant case, were four of the six lots[2] which the Cozzolinos and the Guilianos purchased from Victor Gemma on November 7, 1969.
Domenic and Rose Guiliano and Anthony[3] and Alessandra Cozzolino had been friends for approximately forty years. Sometime in November, prior to November 7, 1969, they had orally agreed to associate themselves as partners for the purpose of purchasing real estate, agreeing to share in the payment of taxes thereon and in the proceeds from the sale thereof. Accordingly, the purchase price of these four parcels was provided equally by the Guilianos and the Cozzolinos while title was taken in the name of the Cozzolinos. Thereafter, on April 6, 1974, the Cozzolinos conveyed lots twenty-one (21) and twenty-two (22) to Ettore and Mary Capporelli for the sum of three-thousand (3,000) dollars. Pursuant to their oral agreement, the profits were divided as follows: two thousand (2,000) dollars was paid to the Guilianos, who in turn paid one thousand (1,000) dollars as a "finder's fee" from their profits to their son, Louis Guiliano; one thousand (1,000) dollars was paid to the Cozzolinos.
By written agreement dated October 13, 1986 (Defendants' Exhibit C), Ralph Montella, Jr., a realtor for twenty-five years, accepted a deposit of one thousand (1,000) dollars from Linda Coleman to be applied toward the purchase price of these four lots to be conveyed on or before thirty days. This sale never materialized resulting in the return of Linda Coleman's deposit. Thereafter another prospective buyer, Edward Breggia, had offered fifteen thousand (15,000) dollars for the subject property to Mrs. Cozzolino, who had informed him that her brother, Ralph Montella, would handle the sale and property. Accordingly, Mr. Breggia, who owned adjacent property and wanted the subject lots to continue his development, gave Ralph Montella a one thousand (1,000) dollar deposit and signed a purchase and sale agreement for ten thousand (10,000) dollars. However, Mr. Breggia testified that although he had signed the purchase and sale agreement for ten thousand (10,000) dollars, he would pay Mrs. Cozzolino an additional five thousand (5,000) dollars in cash. Again, this sale failed to materialize, as Mr. Montella testified that he had told Mr. Breggia that he was unable to enforce the Purchase and Sale Agreement as his sister had never signed it.
Then on June 16, 1987 Mrs. Cozzolino accepted a check, drawn on the account of Ralph and Phyllis Montella, in the amount of ten thousand (10,000) dollars which was intended as payment of the purchase price of the subject property. The defendants contend that this conveyance was made to avoid the continual, harassing phone calls Mrs. Cozzolino was receiving from Mr. Breggia. Mrs. Cozzolino has admitted that she never had the land valued or appraised prior to this conveyance. (Deposition of Alessandra Cozzolino, July 25, 1988, Exhibit C at p. 33).
Although the purchase price was paid on June 16, 1987, Mrs. Cozzolino signed and delivered a warranty deed to defendants Montellas on April 6, 1988. Prior to June 16, 1987, but after the purchase price was paid to Ralph Montella, Louis Guiliano sent a letter in January of 1988, to Mrs. Cozzolino notifying her that the Guilianos did not want to sell the property to Mr. Montella. (Affidavit of Louis Guiliano, July 3, 1990) Mrs. Cozzolino subsequently showed this letter to her brother, Ralph. It is undisputed that Louis Guiliano additionally telephoned Ralph prior to Mrs. Cozzolino's executing the deed and argued with Ralph regarding Mrs. Cozzolino's right to deed the property to him and further stated that the Guilianos did not wish to sell him the property. Rose Guiliano also testified at trial that she had had a conversation with Ralph prior to the time of the "disputed" conveyance and during which she informed Ralph that she and Louis were involved with the property. Ralph had also testified at his deposition that his sister had told him that she and the Guilianos were partners though she did not have any papers to that effect.
Rose Guiliano never consented to the sale of this property to the Montellas. However, Mrs. Cozzolino at her deposition of July 25, 1988 testified that she consulted with the Guilianos regarding land sales ". . . all the time." (July 25, 1988 Deposition of Alessandra Cozzolino, p. 25). With respect to the sale to her brother, Mrs. Cozzolino at her deposition stated that she told Domenic Guiliano of her brother's interest and Mr. Guiliano told her basically to ". . . see what [she could] do . . ." as he needed the money. (Alessandra Cozzolino's Deposition at p. 26).
Eventually, in April of 1990, defendants, Ralph and Phyllis Montella, entered into a Purchase and Sale Agreement with Smollin Development which agreed to buy the four lots for sixty thousand (60,000) dollars. This sale never materialized as Mr. Cortolessa, on behalf of Smollin Development, reneged when he learned of two lis pendens that had been placed on the property by the Guilianos on May 23, 1988 and July 15, 1988, respectively.
Plaintiff Guilianos have petitioned this Court to order Ralph and Phyllis Montella to execute a deed conveying the real estate back to Alessandra Cozzolino, Domenic Guiliano, and Rose Guiliano. Alternatively, defendants Ralph and Phyllis Montella move for a dismissal of the plaintiff's complaint and further request a monetary award of actual and punitive damages for the plaintiffs' alleged slander of their title. Defendant Alessandra Cozzolino moves this Court to order the distribution of the proceeds of the sale of the land to be divided fifty/fifty (50/50) between her and the Guilianos. Additionally, Alessandra Cozzolino seeks a set off and money damages in the sum of $696.00[4] and money damages as reimbursement for attorney's fees.
THE ESTABLISHMENT OF A PARTNERSHIP
A partnership is ". . . an association of two (2) or more persons to carry on as co-owners of a business for profit." R.I.G.L. 1956 (1985 Reenactment § 7-12-17). With respect to ascertaining the existence of a partnership, § 7-12-18(4) in pertinent part provides that ". . . [t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . ." The partnership agreement does not have to be in writing, as "[i]t is well-settled that a partnership contract may be oral and may be inferred from the conduct of the parties." Cooper v. Saunders-Hunt, 365 A.2d 626
(D.C. Ct. App. 1976).
The Guilianos and the Cozzolinos have demonstrated that in November of 1969 they agreed to associate themselves as partners in the purchase of real estate. With respect to that real estate, the Guilianos and the Cozzolinos further agreed to share in the payment of taxes and to share equally the proceeds from its sale. The specific business of the Guiliano/Cozzolino partnership involved real property. Section 7-12-19, entitled "Partnership property" unequivocally and in pertinent part provides:
 (1) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property.
 (2) Unless the contrary intention appears, property acquired with partnership funds is partnership property.
Accordingly, the Court finds that a partnership for the purchase and sale of property was created by the Guilianos and the Cozzolinos.
Initially problematic in the case at bar is the partnership name, which was originally Anthony and Alessandra Cozzolino, and after the death of Anthony Cozzolino, simply Alessandra Cozzolino. Section 7-12-21(3) recognizes that title to real property may be ". . . in the name of one or more but not all the partners . . ." Clearly, Alessandra Cozzolino "generally" could convey the partnership property by virtue of § 7-12-21(3) which provides ". . . the partners in whose name the title stands may convey title to such property . . ." and pursuant to §7-12-20(1) which provides that "[e]very partner is an agent of the partnership for the purpose of its business. . . ." However § 7-12-20(1) and § 7-12-21(1) and (3) in essence further provide that one partner's acts may bind the partnership ". . . unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." Section 7-12-21(1) and (5), entitled "Conveyance of real property of the partnership," additionally provides the remedy for a wrongful conveyance of property pursuant to §7-12-20(1); recovery of the property by the partnership. However, such a recovery is conditional upon the partner's conveying the subject property without authority, thus causing his or her act not to bind the partnership and upon the purchaser being ". . . a holder for value without knowledge."
THE STATUTE OF FRAUDS
Defendants Ralph and Phyllis Montella argue that the statute of frauds prevents the plaintiffs from maintaining the present action. Specifically, the Montellas maintain that the Rhode Island Statute of Frauds prohibits a partnership, such as one involving real property as in the case at bar, unless the partnership agreement is in writing. In making this argument, defendants Ralph and Phyllis Montella rely on R.I.G.L. 1956 (1985 Reenactment) § 9-1-4(6) which in relevant part provides:
 Statute of frauds. — No action shall be brought:
 (6) whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate, unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereon to lawfully authorized.
The Montellas' reliance on the Rhode Island Statute of Frauds is misplaced as § 7-12-1, et. seq., as amended, dictate the law of partnership. Section 7-12-16 specifically mandates that "in any case not provided for in § 7-12-12 — § 7-12-55, inclusive, the rules of law and equity govern." A real estate partnership is provided for in the Rhode Island Partnership Statute. Section7-12-19 pertains to partnership property and subsection (1) specifically recognizes that property acquired with partnership funds is partnership property. Furthermore, § 7-12-19(3) provides that title to such partnership property ". . . can be conveyed only in the partnership name." A valid partnership agreement may be oral and pursuant to § 7-12-19, property purchased with the funds of a partnership became a part of such a partnership. Case law reaffirms that if an oral partnership agreement is one for the purchase of land, it does not come within the statute of frauds. Weisner v. Benenson, 275 App. Div. 324, 89 NYS.2d 331, (1949) aff'd without op 300 N.Y. 669, 91 N.E.2d 325 (See alsoNelson v. Barnick, 63 N.W.2d 911 (Iowa 1954). In Loft v.Lapidus, 936 F.2d 633 (1st Cir. 1991), our Rhode Island Supreme Court recognized such an oral "real estate partnership." The Court here found that an oral partnership agreement existed between a real estate developer and investors who supplied funds for the acquisition and development of property and further, that these parties who had entered into this oral partnership agreement were entitled to share in the proceeds from a lawsuit against the owner of that subject property.
THE PURCHASE AND SALE AGREEMENT
Defendants Ralph and Phyllis Montella also contend that their June 16, 1987 agreement with Alessandra Cozzolino and their payment of ten thousand (10,000) dollars pursuant thereto constituted an equitable conversion of ownership of the subject property to the vendees. Consequently, the Montellas further argue that the January 4, 1988 letter from the Guiliano family urging Mrs. Cozzolino not to sell the property was "too late" and thus of no legal significance.
The Court recognizes that "generally" ". . . the execution of a purchase and sale agreement renders the buyer the equitable owner but does not result in a transfer of possession or legal title." Casador v. First National Stores, Inc., 107 R.I. 104, 110, 265 A.2d 429, 433 (1970). However, the Rhode Island Partnership Statute (which hereinafter and pursuant to § 7-12-12
will be cited as the Uniform Partnership Act), namely § 7-12-21, entitled, "Conveyance of real property of the partnership," provides for the recovery of the property specifically evenafter a conveyance is executed: in other words, after title, both legal and equitable, have passed. Additionally and historically, the constructive trust may be imposed ". . . when one party obtained legal title to property either by fraud or in violation of a fiduciary relationship and the Rhode Island Partnership Statute recognizes in § 7-12-32 that a partner is ". . . accountable as a fiduciary."
MRS. COZZOLINO'S POWER TO BIND THE PARTNERSHIP
With respect to Alessandra Cozzolino's power to bind the partnership, defendants Ralph and Phyllis Montella next argue that Mrs. Cozzolino as a partner, was an agent of the partnership and an agent who had authority to convey the subject property. Applicable here are § 7-12-21(3) and § 7-12-20(1) which in pertinent part provide:
Conveyance of real property of the partnership. —
 (3) Where title to real property is in the name of one or more but not all the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partners' act does not bind the partnership under the provisions of subsection (1) of § 7-12-20
unless the purchaser or his assignee, is a holder for value, without knowledge.
 7-12-20. Partner agent of partnership as to partnership business —
 (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.
Notably included in (1) is the proviso ". . . unless the partner so acting has in fact no authority to act for the partner in the particular matter." Although at common law a partner could without the concurrence of his partners convey the real estate of the partnership, this rule was changed by the Uniform Partnership Act, Hodge v. Garrett, 614 P.2d 420, 422 (Idaho 1980), which has been adopted in Rhode Island in § 7-12-12 through § 7-12-55. Accordingly, the Court recognizes that pursuant to § 7-12-20, Alessandra Cozzolino, as a partner, could possess the authority to bind the partnership for the purpose of its business — here to sell the subject property. However, the Court is ever mindful that if the partner acting as agent had no authority to act for the partnership in a particular matter, and the person with whom said agent/partner dealt had knowledge that the partner/agent lacked this authority or if said partner/agent performed one act which pursuant to § 7-12-20(2) was ". . . not apparently for the carrying on of the business of the partnership in the usual way . . .," the partner would not bind the other partners. Pursuant to § 7-12-21(3), if a partner executes a conveyance in the partnership name or his own name and pursuant to the above is accordingly found not to bind the partnership, the partnership may recover the property.
Additionally, the partnership relationship is a fiduciary one, as specified by § 7-12-32, entitled, "Partner accountable as a fiduciary." This fiduciary relationship requires ". . . the utmost good faith and loyalty and obligation of each member of the partnership to make full disclosure of all known information that is significant and material to the affairs or property of the partnership." Herring v. Offutt, 295 A.2d 876, 879 (QuotingAllen v. Steinberg, 244 Md. 119, 128, 223 A.2d 240 (1965)). InLoft v. Lapidus our Supreme Court held that it was "fundamental" that one partner owed a fiduciary duty to the other partners with respect to any transaction involving the partnership property and for the purposes of that case, with respect to their rights under a Purchase and Sale Agreement. When a partner violates his or her fiduciary duty to fellow partners, pursuant to § 7-12-32, he or she must ". . . account to the other partners for any benefit and hold as trustee for it any profits . . ." derived by him without their consent. Accordingly, "[a] constructive trust will be imposed on property that is obtained in violation of a fiduciary duty." Simpson v. Dailey,496 A.2d 126, 128 (R.I. 1985). Where this fiduciary relationship is involved, as it is here among partners, the breach of the fiduciary duty itself constitutes constructive fraud warranting the imposition of the constructive trust. The plaintiffs correctly note that the actual existence of fraudulent intent need not be demonstrated to request the equitable relief, namely recovery of the property, provided for under the Uniform Partnership Act, namely § 7-12-21(3) and § 7-12-32(1).
The Court recognizes that there were two distinct acts performed by Alessandra Cozzolino on behalf of the partnership: the signing of the Purchase and Sale Agreement and, ultimately, the conveyance of the subject property. With respect to Mrs. Cozzolino's signing of the Purchase and Sale Agreement, the Court finds that she signed the document without specifically informing her co-partners, the Guilianos, of same. Such an act did clearly not constitute the ". . . carrying on of the business of the partnership in the usual way," not even in the proper partnership way as Alessandra, as a partner and as a fiduciary, had a duty to disclose all material facts with respect to the partnership property and business. The evidence further reveals that with respect to the Guiliano/Cozzolino partnership, the practice had consisted of Mrs. Cozzolino consulting with the Guilianos before conveying partnership property held in her name. For example, in 1974 when Mrs. Cozzolino conveyed the Gemma land to the Capporellis, Mrs. Cozzolino testified that the Guilianos were told about and agreed to the sale and further acknowledged that they had ". . . a right to know." Mrs. Cozzolino further testified that ". . . whatever [she] did [she] always made sure they knew." Additionally, Mrs. Cozzolino testified that people would occasionally communicate offers of which she ". . . all the time advised the Guilianos." However, Rose Guiliano testified that she never agreed to sell the land to Ralph Montella and never discussed the subject sale to Mr. Montella.
Nonetheless, there was additional testimony and evidence that Domenic Guiliano had at several times communicated to Alessandra his general eagerness to sell the land. Alessandra also testified that she had, during one of her Sunday visits with Rose Guiliano, told her she had a buyer for the subject property. Furthermore, in her affidavit of July 31, 1990, Rose Guiliano stated that Alessandra had approached her regarding selling land to her brother and that her brother had informed his sister that she did not have to give the Guilianos any of the proceeds.
Whether or not Alessandra had authority initially to sign the subject Purchase and Sale Agreement, this Court finds that Mrs. Cozzolino clearly lacked authority ultimately to convey the subject property. This Court further finds that Ralph Montella, Jr. possessed knowledge of Mrs. Cozzolino's lack of authority. Prior to the date of the actual conveyance, April 6, 1988, Louis Guiliano had in January of 1988 sent a letter to Mrs. Cozzolino formally notifying her of the objection of the Guiliano family. Ralph Montella, Jr. testified that he read and discussed this letter with his sister but maintained that he believed his sister possessed the authority to convey the land. Furthermore, Mr. Montella also admitted having a phone conversation with Louis Guiliano, a conversation that took place prior to the April 6, 1988 conveyance, and during which Louis and he argued about Mrs. Cozzolino's right to deed the property. Ralph Montella, Jr., a real estate agent for approximately twenty-five years, brother and "confidante" of Alessandra Cozzolino, cannot by any stretch of this Court's imagination be regarded as an innocent purchaser for value. Furthermore, Mrs. Cozzolino testified that she had told Ralph that she and the Guilianos were partners although she had no papers.
The evidence reveals that Ralph Montella knew before the date of the conveyance that Alessandra Cozzolino did not have the consent of "others" who had an ownership interest in the subject land: her co-partners. Alessandra lacked authority to convey the subject property and Ralph Montella knew of this fact. Accordingly, Alessandra's signature is not binding in conveying the partnership property, which pursuant to § 7-12-21 warrants recovery by the partnership.
THE SLANDER OF TITLE COUNTERCLAIM
Defendants Montella have additionally counterclaimed that Domenic and Rose Guiliano have slandered their title when they caused to be filed two lis pendens on the subject four lots. Specifically, the Montellas are demanding judgment against the Guilianos jointly and severally in the amount of $100,000. in special damages plus punitive damages for the counterclaim defendants' filing the first lis pendens on May 23, 1988. The Montellas are also demanding judgment against the counterclaim defendants jointly and severally in the amount of $150,000. in special damages plus punitive damages for their filing a second lis pendens on the same property on July 15, 1988.
The elements necessary for a plaintiff to prove slander of title are that the plaintiff prove ". . . (1) that the alleged wrongdoer uttered or published a false statement, (2) that the uttering or publishing was malicious, and (3) that the plaintiff suffered a pecuniary loss as a result." Eastern Motor Inns, Inc.v. Ricci, 565 A.2d 1265, 1273 (R.I. 1989) (quoting DeLeo v.Anthony A. Nunes, Inc., 546 A.2d 1344 (R.I. 1988)). The requisite "malice" has been specifically defined as an intent to "deceive or injure, and as such is distinguishable from malice in its worst sense. Peckham v. Hirschfeld, 570 A.2d 663, 667 (R.I. 1990) (quoting Hopkins v. Drowne, 21 R.I. 20, 23, 41 A. 567
(1895)). With respect to real property, the lis pendens is generally designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist and take subject to the judgment rendered in the litigation. Balkowski v. Soleck,316 N.W.2d 434, 439 (Mich. App. 1982) (quoting 51 Am.Jur.2d, Lis Pendens, § 1, p. 949.) Accordingly, the burden of the Montellas as counterclaim plaintiffs is to demonstrate that the Guilianos recorded the lis pendens ". . . with full knowledge of its falsity" and "for the special purpose of injuring" the Montellas. (See Eastern Motor Inns, 565 A.2d at 1273). Furthermore, as a plaintiff in a slander of title action must show that ". . . the defendant could not honestly have believed in the existence of the right he claimed, or at least had no reasons or probable cause of believing so," Peckham, 570 A.2d at 667, the Montellas must show that the counterclaim defendants' filing of the lis pendens was for the purpose of injuring the Montellas rather than for preserving their own property right.
The Court finds that the Montellas have clearly not met their burden of proving slander of title. The evidence clearly demonstrates that the Guilianos reasonably believed they possessed a property right in the subject parcels when they filed both the first and the second lis pendens. Each of the lis pendens was filed after Alessandra Cozzolino sold partnership property without the actual consent of her Guiliano co-partners and despite their vehement objections to the same, expressed orally in a telephone conversation with Ralph and written in a letter to Alessandra. Secondly, as the Guiliano co-partners were here asserting a claim to property that was not unfounded and was eventually to be proven rightful, the slander of title claim must fail. The Court is mindful that even erroneous statements made in good faith or claims unfounded but in which the plaintiff has honestly believed have been held not to demonstrate the malice required for a successful slander of title claim. Id. As the Court finds that the Montellas, as counterclaim defendants, did not utter or publish maliciously false statements, the damage claims are rendered moot.
UNJUST ENRICHMENT
Finally, the defendants Montella argue that they have not been unjustly enriched by Mrs. Cozzolino's conveyance of land to them for the sum of ten thousand (10,000) dollars. To rebut the plaintiffs' claim of unjust enrichment, the defendants Montella have submitted an appraisal from Stanley E. Severance, S.P.A., done on the subject property on September 7, 1988 valuing the lots on June 16, 1987 at six thousand (6,000) dollars. (Defendants' Exhibit A). Alternatively, the plaintiffs have submitted an appraisal done by John Valade done on January 24, 1992, valuing the land in June of 1987 at thirty thousand (30,000) dollars. (Plaintiffs' Exhibit 7). Additionally, Edward Breggia testified that he offered to buy the subject property for fifteen thousand (15,000) dollars in June of 1986. However, ultimately, on April 27, 1990, on behalf of Smollin Development, executed a Purchase and Sale Agreement with Ralph Montella offering to buy the property for sixty thousand (60,000) dollars. (Defendants' Exhibit H). This Purchase and Sale Agreement specifically stated: "It is understood by the Buyer that there are no sewers, water, or other utilities on the premises." (Defendant's Exhibit H at p. 1).
It is not a necessary element of a cause of unjust enrichment to show that the plaintiff suffered a loss corresponding to the gain received by the defendant. Saunders v. Kline, 391 N.Y.2d 1, 2, 55 A.D.2d 887 (1977). Whether there is unjust enrichment must involve a realistic determination based on a broad view of the human setting involved . . . with no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable . . ." AB Boiler Company, Inc. v. GardeCorporation, 615, 349 A.2d 155, 156 (Conn. Supp. 1975). Although Ralph Montella maintains that he bought the land for the sum of ten thousand (10,000) dollars from his sister to protect her from "harassment," the Court finds that this sale between siblings involving "undeveloped" partnership property would have unjustly enriched Mr. Montella. A consideration of all the circumstances surrounding Mrs. Cozzolino's subject conveyance, including the Smollin Development Purchase and Sale Agreement for sixty thousand (60,000) dollars less than three years later, has demonstrated to the satisfaction of this Court that the Guiliano's unjust enrichment claim is meritorious.
Accordingly, for the reasons herein above set out, the Court finds that Domenic and Rose Guiliano are entitled to recover the subject property pursuant to § 7-12-21(3). The Court also finds that Alessandra Cozzolino has breached her fiduciary duty to her co-partners, the Guilianos, in conveying land that ultimately unjustly enriched two of her family members, the Montellas. The Court hereby orders Ralph and Phyllis Montella to convey the subject property back to Alessandra Cozzolino for the benefit of the partnership. Said conveyance is to be made within thirty days. Furthermore, in addition to denying Alessandra Cozzolino's request for attorney's fees, the Court also denies Mrs. Cozzolino's request for a set off and money damages in the sum of $696.00., as she has failed to satisfy her burden of proof with respect to same.
Counsel shall prepare the appropriate judgment for entry.
[1] Plaintiff Louis Guiliano, son of Domenic and Rose Guiliano, was dismissed from the case by oral stipulation in open court.
[2] Lots twenty-one (21) and twenty-two (22) were the additional parcels originally conveyed.
[3] The estate of Anthony Cozzolino has answered that same was closed "sometime around 1978 or 1979." The amended complaint evidences that the estate of Anthony Cozzolino has been dropped as a party and pursuant to R.C.P. 25(a)(2), the cause of action has proceeded against the surviving parties.
[4] This amount represents one-half of the taxes Mrs. Cozzolino allegedly paid on the property and which she wishes to have the Guilianos set off against their five thousand dollar share of the proceeds derived from the subject property's sale to the Montellas.