766 P.2d 1254

**TREASURE VALLEY PLUMBING AND HEATING, INC., Plaintiff–Respondent,**

v.

**EARTH RESOURCES CO., INC., Defendant–Third Party Plaintiff–Appellant,**

v.

**MOUNTAIN STATES MINERAL EN- TERPRISES, INC., a corporation, Third Party Defendant–Appellant.**

No. 16696.

Court of Appeals of Idaho.

Dec. 9, 1988.

Dale G. Higer (Eberle, Berlin, Kading, Turnbow & Gillespie), Boise, for defendant-third party plaintiff-appellant.

James S. Underwood, Jr., Boise, for plaintiff-respondent.

## SUBSTITUTE OPINION

The Court's prior opinion, dated September 8, 1988, is hereby withdrawn.

BURNETT, Judge.

This is an action brought by a construction subcontractor to foreclose a mechanic's lien for work performed at the Delamar Silver Mine in Owyhee County. Following a non-jury trial, the district court entered judgment in favor of the subcontractor on the lien and on a claim for additional work outside the lien. The court also awarded costs and attorney fees. The mine owner has appealed, raising four issues: (1) whether the district court's findings are supported by substantial evidence; (2) whether the district court abused its discretion in refusing to grant a new trial; (3) whether the subcontractor was entitled to a judgment against the mine owner for the additional work outside the lien; and (4) whether the trial court abused its discretion in making the awards of costs and attorney fees. For reasons explained below, we affirm the district court's judg-

ment with respect to all work performed, and we uphold the award of costs. However, we vacate the award of attorney fees and remand the case for further consideration of that issue.

The essential facts may be stated briefly. Pursuant to an oral agreement the subcontractor, Treasure Valley Plumbing and Heating, Inc., was hired by a general contractor, Mountain States Mineral Enterprises, Inc., to install necessary plumbing and a water supply system at the Delamar Silver Mine. The mine was owned predominantly by Earth Resources Company. Initially, the labor and materials to be provided by Treasure Valley were itemized in a purchase order prepared by Mountain States. Construction on the mine proceeded at a rapid pace. Unanticipated needs and unforeseen problems arose from time to time. As a result, Treasure Valley supplied labor and materials beyond the estimates set forth in the original purchase order. Often, but not always, these revisions were memorialized in change orders or new purchase orders prepared by Mountain States. Eventually the project—including Treasure Valley's work—was successfully completed. However, cost overruns were substantial. Treasure Valley's billings exceeded the original estimates. When Treasure Valley reviewed the records, it determined that it had been underpaid. Both Mountain States and Earth Resources denied any underpayment.

Negotiations with Mountain States and Earth Resources were stymied due to impending litigation between those parties. Accordingly, Treasure Valley filed a notice of claim of lien for $80,097.98—a sum the company could document as being owed at that time. Treasure Valley then sued to foreclose the lien. In the meantime, Earth Resources filed a third-party complaint against Mountain States for indemnification against any recovery obtained by Treasure Valley. When Mountain States did not defend the action, Earth Resources

obtained an order of default. Subsequently, the district court entered summary judgment for Earth Resources on Treasure Valley's lien foreclosure suit, holding that the claim of lien had been defective. On appeal to this Court, the summary judgment was reversed and the case was remanded for trial. *See Treasure Valley Plumbing and Heating, Inc. v. Earth Resources Company,* 106 Idaho 920, 684 P.2d 322 (Ct.App.1984).[1]

At trial the parties explored the factual and accounting issues in great detail. As noted above, the district court ultimately entered judgment for Treasure Valley in an amount secured by the lien plus an amount due for work outside the scope of the lien. In addition, the court awarded costs and attorney fees. The mine property was ordered sold at a public auction to satisfy the aggregate judgment. This appeal followed.

## I

Earth Resources first contends that the district court's findings of fact are not supported by substantial evidence. Earth Resources further urges that because much of the evidence contained in the record is documentary, this Court may exercise *de novo* review over the factual issues. With neither of these contentions do we agree.

## A

■ We first discuss the appropriate standard of review. It is axiomatic that an appellate court will apply differing standards of review to lower court decisions, depending upon the nature of the issues presented. Questions of law or "mixed" questions of law and fact ordinarily call for free review on appeal. *See generally* IDAHO APPELLATE HANDBOOK, *Standards of Appellate Review in State and Federal Courts* 3.2.1 (Idaho Law Foundation, Inc. 1985) (hereinafter cited as HANDBOOK). One such question of law, enti-

---

1. The order of default also was appealed by Mountain States. *See Earth Resources Company v. Mountain States Mineral Enterprises, Inc.,* 106 Idaho 864, 683 P.2d 900 (Ct.App.1984). However, the appeal was dismissed because it had not been taken from an appealable order or judgment. *See* I.A.R. 11. Subsequently, Mountain States agreed to defend this action on behalf of Earth Resources and to pay any judgment entered against Earth Resources.

tling an appellate court to exercise free review, is the interpretation of unambiguous contracts. *See, e.g., Shipley v. Cook,* 109 Idaho 537, 708 P.2d 942 (Ct.App.1985).

■ Over questions of fact, the scope of appellate review is more limited. A trial court's findings will be overturned only upon a showing of clear error. I.R.C.P. 52(a). Clear error, in turn, will not be deemed to exist if the findings are supported by substantial, albeit conflicting, evidence. *Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Questions of credibility and the weight of the evidence are matters uniquely within the province of the trial court. *Id.* The "clear error" standard of review applies regardless of whether the evidence adduced below is documentary or testimonial. HANDBOOK § 3.3.4.2.

■ Here, we have not been asked to interpret the legal import of any contracts. Rather, our task is to determine whether the trial court found facts consistent with a body of evidence that happened to consist largely of documents. On such an issue, the appropriate standard of review is the deferential "clear error" standard. Accordingly, we now apply that standard.

### B

The salient issue at trial was whether or not Treasure Valley had been paid fully for the services and materials it provided. The trial judge noted that when the job was completed, a conference was held among the parties in an effort to reach a final accounting. The points of discussion included change orders and other "extras" throughout the project. The judge found that the parties reached an agreement embracing work performed in addition to that anticipated in the original purchase order. The agreement reflected work for which written change orders had not been sent to Treasure Valley. A large portion of the unpaid obligation was represented by a document known as change order number 8. The agreement also encompassed repair work on a pipeline laid pursuant to the original purchase order but damaged by another subcontractor on the site.

■ The judge determined that the negotiated agreement had not been performed by Earth Resources and that change order number 8 had not been paid. He found that Treasure Valley was owed $105,482.27 for unpaid work, materials and expenses incurred on the Delamar mine project. However, in his conclusions of law, he held that Treasure Valley's compensable claim was limited to two items: the amount recited in the claim of lien ($80,097.98) and an unsecured sum ($11,357.40) representing the cost of repairs to the damaged pipe. The trial judge found that Treasure Valley was entitled to recover the latter sum upon uncontroverted proof that an Earth Resources representative had authorized payment for repairs if the general contractor, Mountain States, failed to compensate Treasure Valley for the extra work. Judgment was entered on the lien for $154,829.39 ($80,097.98 plus prejudgment interest) and on the repair claim for $21,953.85 ($11,357.40 plus prejudgment interest).

Based upon our review of the record, including the voluminous transcripts and exhibits, we cannot say that the judge's findings are clearly erroneous. The evidence adduced at trial clearly indicated that substantial work, not requisitioned in the original purchase order (number 5060), had been performed by Treasure Valley. However, as might have been expected, the evidence regarding payment was conflicting. Both sides presented accounting summaries which reached different conclusions. The trial judge accepted Treasure Valley's calculations despite Earth Resources' contrary evidence and arguments.

Earth Resources advanced two main contentions during the trial. First, it contended that by matching all cancelled checks against purchase and change orders, an overpayment was disclosed. Alternatively, Earth Resources asserted that a certain check, numbered 40708 for $53,500.00, was intended to satisfy the obligation represented by change order number 8. However, as the trial court recognized, Mountain States' first argument was based upon a selective analysis of debits and credits. In

fact, when all work and materials were considered—including those amounts not represented by invoices—Treasure Valley had been underpaid. As to the second contention, Treasure Valley demonstrated that check number 40708 was intended as payment for a schedule of invoices distinct from and prior to the items ultimately contained in change order number 8. Finally, it was undisputed—indeed, conceded by Earth Resources—that Mountain States had not paid certain other billings from Treasure Valley for such items as sales tax, extra liability insurance, and extra pipe which Treasure Valley had ordered but could not return for a refund.

We believe that Treasure Valley adduced substantial evidence in support of its claim. It is true that some of the evidence was controverted. However, these conflicts in the evidence were duly weighed by the trial judge, and we decline to disturb his findings.

## II

Earth Resources next contends that the trial judge abused his discretion in denying the company's motion for a new trial based on surprise and newly discovered evidence.[2] Earth Resources asserts that Treasure Valley made certain claims for the first time at trial. Specifically, the company urges that Treasure Valley failed to give Earth Resources timely notice that it planned to introduce and rely upon change order number 8 in proving its claim; consequently, Earth Resources was unable to prepare a proper rebuttal. Treasure Valley counters that Earth Resources failed to preserve this issue for appeal.

The record reflects that change order number 8 was first introduced into evidence during the direct examination of Treasure Valley's president. He explained that the document represented a large portion of the charges owed to Treasure Valley, that it had been prepared by Mountain States, but that a copy never had been sent to Treasure Valley. The change order itself was uncovered during document production by Earth Resources shortly before trial. Treasure Valley then adjusted its accounting summary based on the information contained in the change order. No objection was made by Earth Resources to any of the matters related to number 8, nor was a continuance sought. During cross-examination of Treasure Valley's witnesses, and during presentation of its own case, Earth Resources referred to this change order and even re-introduced it among its own exhibits.

Earth Resources now asserts that even though change order number 8 was in its possession, nonetheless, it was buried in a morass of documents relating to the litigation and the company was unaware that Treasure Valley would rely specifically upon that document to support its claims. In addition, Earth Resources contends that reliance on change order number 8 represented a "new" claim differing from what Treasure Valley previously had sought.

 It may be that the significance of one piece of paper is difficult to appreciate when it rests within a large pile of documents. It also may be that Earth Resources experienced some surprise when change order number 8 was introduced at trial. However, an accident or surprise will justify a new trial only when the aggrieved party could not have guarded against it by the exercise of ordinary prudence. *See, e.g., Julien v. Barker,* 75 Idaho 413, 272 P.2d 718 (1954). We do not think that test has been satisfied here.

Nor can we say that reliance upon change order number 8 constituted a different claim based upon new evidence. Treasure Valley's consistent position was that it was owed money for work performed at the Delamar mine. Some of the items were documented. Some were not. Change order number 8 represented in written form some of these items. Earth Resources was already well aware of the nature of Treas-

---

**2.** A trial judge may, in his or her discretion, grant a motion for a new trial due to accident or surprise, "which ordinary prudence could not have guarded against" or due to newly discover-ed material evidence, which could not, "with reasonable diligence," have been discovered and produced at trial. I.R.C.P. 59(a)(3) and (4).

ure Valley's claim. The mere fact that Treasure Valley obtained an additional written means of proof does not change the nature of the claim. We conclude that the district judge did not abuse his discretion in denying the motion for a new trial.

### III

Earth Resources next argues that it should not have been held liable for the repair work outside the lien. The company contends that the court erred as a matter of law because a subcontractor cannot recover a personal judgment against a property owner without privity of contract or a written guaranty. As noted above, the trial court found that Treasure Valley's president received unequivocal oral assurances from an authorized Earth Resources representative that Earth Resources would pay for all costs associated with certain repairs and removal of pipe damaged after installation. The court entered judgment based upon this promise. Earth Resources urges that the court's decision was erroneous because Treasure Valley's only written contract was with the general contractor, Mountain States. The company argues that in the absence of privity of contract between Treasure Valley and Earth Resources, the statute of frauds, I.C. § 9–505, would require that the promise to answer for the "debt of another" be in writing.

It is true that I.C. § 9–505 generally requires a written promise. However, an exception exists when the promise is original or independent from, and not merely collateral to, the agreement between the promisee and the third-party debtor. An original obligation of the promisor is not covered by the terms of the statute of frauds. See I.C. § 9–506. Ordinarily, the determination of whether an oral promise constitutes a collateral or an original obligation is a question of fact. *Beaupre v. Kingen,* 109 Idaho 610, 710 P.2d 520 (1985). Here, the trial judge did not make a specific finding on this question. However, by enforcing the promise he implicitly found that the obligation was original. We conclude that the evidence supports the trial court's implicit determination.

This issue is closely akin to a dispute that frequently arises in construction situations. An owner of unimproved realty employs a general contractor to build improvements on the land. The contractor orders labor and materials from a subcontractor who undertakes performance. Subsequently, the contractor again fails to pay and the subcontractor—as in this case—refuses to complete performance. However, the subcontractor agrees to recommence work, or to do other work, when the property owner agrees to pay the contractor's debt. When the subcontractor ultimately completes the job and the contractor again fails to pay, the subcontractor sues the owner, who asserts the statute of frauds as a defense. *See* J. CALAMARI AND J. PERILLO, CONTRACTS § 19–7 (2d. ed. 1977) (hereafter CALAMARI AND PERILLO). Courts have resolved these disputes in different ways. The majority—and in our opinion the better—view applies the "main purpose" rule to this scenario. *See* RESTATEMENT OF SECURITY § 93 (1941). The main purpose rule provides that where the promisor (the owner) "has for his object a benefit which he did not enjoy before his promise, which benefit accrues immediately to himself, his promise is original, whether made before, after or at the time of the promise of the third party (the general contractor), notwithstanding that the effect is to promise to pay or discharge the debt of another." *Nelson v. Boynton,* 44 Mass. 396 (1841) (quoted in CALAMARI AND PERILLO § 19–6 at p. 685). In order for the rule to apply, there must be consideration for the owner's promise and the consideration must be beneficial to him. *Id.*

Here, we believe that there was consideration for Earth Resources' promise and that a benefit was derived by the company. The separate consideration consisted of Treasure Valley's promise to re-do work on a damaged stretch of pipe that already had been installed. Earth Resources—through its general contractor, Mountain States—would have found it necessary to pay someone to complete these repairs. Treasure Valley was not obligated to do so under its

original agreement. Thus, Earth Resources' pledge to pay was separate and apart from the original agreement between Mountain States and Treasure Valley. That agreement had been fully performed. Accordingly, we hold that the trial court did not err in holding Earth Resources liable on this separate claim.

## IV

Earth Resources' last contention is that the trial court erred in granting certain costs and attorney fees. These awards were $2,212.00 and $50,161.88, respectively. Two separate arguments are subsumed within this issue. First, Earth Resources argues that the trial court improperly granted witness fees and travel expenses with respect to testimony by Treasure Valley's president and his accountant. Second, Earth Resources contends that the amount awarded as attorney fees is unreasonable. We discuss each issue in turn.

## A

█ Earth Resources correctly notes that subsections (3) and (4) of I.R.C.P. 54(d)(1)(C) allow the prevailing party to recover witness fees and travel expenses for witnesses other than parties to the action. The company urges that Treasure Valley's president and his accountant are "parties" to the action; consequently, their fees and expenses should be limited to the $20.00 daily rate for party witnesses. We disagree. The prevailing party in this case is the Treasure Valley corporate entity, not its president or an agent of the president. Therefore, the court did not err in awarding costs for these witnesses' attendance at trial. *Feenaughty Machinery Co. v. Turner,* 44 Idaho 363, 257 P. 38 (1927); *see also Dasher v. Mutual Life Insurance Co. of New York,* 78 F.R.D. 142 (S.D.Ga.1978) (prevailing insurance company entitled to costs for travel expenses incurred by two of its officers in attending depositions intended to be used at trial).

## B

The attorney fee question is more complex. Treasure Valley's counsel informed the district court that he had taken the case on a 40% contingency basis. The fee under this arrangement would have been $70,-713.30 (40% of $154,829.39 and $21,953.85 combined). However, counsel prudently foresaw that a contingency contract would not be dispositive as to the trial court's determination of a reasonable attorney fee award. *See Nalen v. Jenkins,* 114 Idaho 973, 763 P.2d 1081 (Ct.App.1988). Accordingly, he filed two affidavits detailing the legal services provided, the hours consumed and the hourly rates customarily charged.

In the first affidavit, counsel claimed 512.5 hours at an "average" rate of $66.00 per hour, implying a fee of $33,825.00. However, the affidavit stated that the fee earned was $50,161.88, "including interest." In the second affidavit, counsel itemized 86.4 additional hours for post-trial work, chargeable at his then-current rate of $85.00 per hour. Although these figures implied a fee of $7,344.00, the affidavit stated the fee as $7,954.10—again "including interest." Taken together, the affidavits itemized hourly charges totaling $41,169.00, but they asserted an aggregate fee of $58,115.98 "including interest." In addition, both affidavits referred to various "office charges" which—"with interest"—brought the total request to $62,194.55. The judge awarded $50,161.88, evidently focusing on the amount claimed "with interest" in the first affidavit.

Treasure Valley has accepted this award, but Earth Resources has challenged it as being excessive. The primary focus of Earth Resources' argument is the inclusion of "interest" in the $50,161.88 figure adopted by the judge. Earth Resources contends that such "interest" is precluded by our decision in *Camp v. Jiminez,* 107 Idaho 878, 693 P.2d 1080 (Ct.App.1984). In that case we stated that "no prejudgment interest" would accrue upon an award of costs and attorney fees. *Id.* at 886, 693 P.2d at 1088. However, the language of *Camp* does not squarely fit the present case. The issue here is not whether an attorney fee award, *having been determined,* may draw "prejudgment interest."

Rather, it is whether a trial court, *in determining* a reasonable fee award, may consider interest a lawyer has charged, or could have charged, on unpaid billings as the case progressed.

We believe there is a conceptual difficulty in making an award which explicitly incorporates such interest charges. The purpose of an attorney fee award is to furnish the prevailing party a fund from which to pay a *reasonable* fee. This fund may not correspond precisely to the prevailing party's *actual* obligation to his lawyer. *Nalen v. Jenkins, supra.* Consequently, the lawyer's billing sequences and interest-charging practices are not directly relevant to the ascertainment of a reasonable fee award. Moreover, there are practical difficulties in using interest charges to determine fee awards. Among them are the burden of computing interest on each unpaid billing, the variability of interest rates and charges, the doubtful application of interest charges to contingency cases (like this one), and the apparent anomaly of "penalizing" a prevailing party who has avoided interest charges by paying his lawyer's bills on time. Accordingly, we hold that trial judges need not, and should not, incorporate lawyers' interest charges into determinations of reasonable fee awards.

This does not mean that judges must wholly disregard cash-flow problems, or the diminishing value of money over time, in cases marked by exceptionally protracted litigation. Rule 54(e)(3), I.R.C.P., which articulates the criteria for determining reasonable fee awards, provides at subsections (H) and (K) that a judge may consider the "undesirability of the case" and "[a]ny other factor which the court deems appropriate...." Accordingly, the judge may recognize the hardship imposed upon a prevailing party and his lawyer by a lengthy time span between the rendition of legal services and the eventual receipt of a fee award. However, the judge should weigh this hardship in a general balance with all other applicable criteria under Rule 54(e)(3), rather than isolating and attempting to quantify it through interest charges on attorney billings.

The fee award in this case was based upon such a quantification. It was derived by adding "interest" to the hourly value of services provided. Where, as here, a trial judge's discretionary decision has been affected by a factor deemed improper by the appellate court, the decision must be set aside and the case remanded for reconsideration under the proper criteria. *E.g., Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 733 P.2d 824 (Ct.App. 1987). Accordingly, we vacate the fee award in this case. On remand, we instruct the judge to determine a reasonable award through a balanced consideration of all the Rule 54(e)(3) criteria.

As further guidance on remand, we note that Treasure Valley's first affidavit of attorney fees included services rendered during the appeal decided by our Court in 1984. Those appellate services should not be confused with trial-level services. We disallowed appellate fees in that decision. *See Treasure Valley Plumbing and Heating, Inc. v. Earth Resources Co.*, 106 Idaho at 924, 684 P.2d at 326. Consequently, services connected with the first appeal should not be considered by the district court in its determination of a reasonable fee.

## V

Finally, Treasure Valley requests attorney fees in the present appeal. As noted in our 1984 decision, attorney fees are not recoverable on appeal under the mechanic's lien statute, I.C. § 45–513. *See Ivie v. Peck*, 94 Idaho 625, 495 P.2d 1110 (1972). An award could be made under I.C. § 12–121, *see, Acoustic Specialties, Inc. v. Wright*, 103 Idaho 595, 651 P.2d 529 (1982), but only if we found that Earth Resource's appeal was brought or pursued "frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1); *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). We do not so find. Accordingly, the request for attorney fees on appeal must be denied.

In sum, the judgment of the district court is affirmed with respect to the work performed by Treasure Valley and the award of costs. The judgment is vacated as to the award of attorney fees, and the case is remanded on that issue. Because Treasure Valley is the dominantly prevailing party in this appeal, it shall receive its costs, exclusive of attorney fees.

WALTERS, C.J., and SWANSTROM, J., concur.