588 P.2d 933

MARSHALL BROTHERS, INC., an Idaho Corporation, and Gate City Real Estate Company, an Idaho Corporation, Plaintiffs-Respondents, Cross-Appellants,

v.

Corman C. GEISLER, Daniel A. Loewen, and Geisler-Greaves-Loewen Development Company, a partnership, Defendants-Appellants, Cross-Respondents.

No. 12554.

Supreme Court of Idaho.

Dec. 29, 1978.

R. M. Whittier, Pocatello, for Corman C. Geisler et al.

D. James Manning, Jr., of Racine, Huntley & Olson, Pocatello, for Marshall Bros. Inc., et al.

BAKES, Justice.

This action was commenced below by plaintiff respondents Marshall Brothers, Inc. (Marshall), and Gate City Real Estate Company (Gate City), licensed real estate brokerage companies, for recovery of a broker's commission they claim defendant appellant land developers owed them. Plaintiff respondents Marshall and Gate City claimed the commission was due as a result of their producing a ready and willing buyer for the land defendant appellants had listed for sale, although the offer of that buyer was never accepted by the developers. The district court, hearing the case without a jury, awarded plaintiff respondents one-half of the commission fee which the written realty commission contract contemplated the brokers would receive for providing a buyer. Defendant appellants brought this appeal, contending that under the terms of the contract no fee had been earned. Plaintiff respondents have cross appealed, claiming that two-thirds, not one-half, of the contractual fee should have been awarded them. In this appeal we affirm the award of the commission to plaintiffs Marshall and Gate City, but hold, on the cross appeal, that two-thirds, not one-half, of the contractual fee should have been awarded.

Defendant appellants Geisler and Loewen were in 1975 co-owners with William Greaves of a twelve acre undeveloped parcel of land in Pocatello, Idaho. Geisler, Loewen and Greaves were partners in the Geisler-Greaves-Loewen Development Co., and this partnership was also a named defendant in the action. William Greaves individually was not made a party defendant in the suit. On January 31, 1975, Greaves, Geisler and Loewen entered into a written agreement in which the nature of the parties' ownership of the twelve acre tract and their relationship among themselves was set out. The agreement was designated a "Comprehensive Tenancy-in-Common Agreement" and contained various provisions respecting the rights and liabilities of the parties, of which two relevant to this action are as follows:

"3. The profits and losses of this tenancy in common shall be shared among the tenants in common in the same proportion as their ownership interest.

. . . . .

"15. The tenants in common acknowledge that a majority of the tenants in common have the sole right to determine

selling price and terms of the subject real estate."

On July 29, 1975, plaintiff Marshall, a licensed Idaho real estate broker doing business in Pocatello, Idaho, entered a written real estate broker's employment contract with the Geisler-Loewen-Greaves partnership in which Marshall undertook to sell the twelve acre parcel. Also listed as a broker in this agreement was William Greaves & Associates, a licensed Utah real estate broker located in Salt Lake City. William Greaves signed the contract on behalf of William Greaves & Associates. Greaves and Geisler signed this brokerage contract as partners on behalf of the Geisler-Loewen-Greaves partnership; Loewen did not sign the agreement. The brokerage agreement provided that Marshall and William Greaves & Associates would split equally any fee; that a sales commission of 10% of the selling price would be earned on the finding of a "buyer ready and willing to enter into a deal for said price and terms"; and that either broker could "if desired, secure the cooperation of any other broker, or group of brokers, in procuring a sale of said property." Price and terms were $144,000 with a "substantial down payment." The contract exempted one prospective buyer, Federal Projects, Inc., from the commission agreement. It was further noted on the agreement that "the owners are partners through a comprehensive tenancy-in-common agreement . . . ." The brokerage contract was to be effective until January 1, 1976.

During August, 1975, Marshall undertook to find a buyer for the property. It erected signs on the land and showed the parcel to prospects. In the course of these efforts, Marshall contacted Gate City, another licensed real estate broker located in Pocatello, in an effort to help solicit a buyer. As noted above, the employment of cooperating agents was contemplated in the broker's contract. In early September, 1975, Gate City located a prospective buyer who was interested in the property. At this time an oral agreement was made between Marshall, Gate City and William Greaves of William Greaves & Associates that any bro-

kerage commission that would result from the sale of the property would be split in three equal parts, to be shared by Marshall, Gate City, and William Greaves & Associates, if Gate City, as a cooperating broker, were to produce a ready and willing buyer for the property. This agreement was reached by phone calls between Marshall and William Greaves, and Marshall and Gate City.

On September 3, 1975, Gate City obtained an offer on the property in the amount of $120,000 made by one Neal Brutsche. Brutsche at that time made an earnest money deposit of $1,000. This offer did not meet the price terms demanded by the sellers, and no response to the offer was ever made by any of the three co-owners.

On September 11, 1975, William Greaves sold his one-third share of the co-tenancy to his two partners, Loewen and Geisler. On September 23, 1975, Greaves notified Marshall of this transaction by letter containing the following statement: "I have transferred my ownership interest in the Pocatello land to my two partners, and they have been advised to cancel the listing." No further instructions were received by Marshall from any of the co-owners respecting the agreement by which Marshall was to sell the land.

On September 26, 1975, Brutsche changed his offer to meet the sellers' asking price for the twelve acres. At that time Brutsche agreed to transfer the $1,000 earnest money he deposited on his first offer to the second offer and to pay the balance of the agreed $144,000 selling price in cash upon closing. This offer again was never accepted by the sellers.

Subsequently, Geisler agreed to sell his share of the co-tenancy, now a one-half interest, to Federal Projects, Inc. (FPI), and Loewen entered into a partnership with FPI for construction of a federally funded apartment complex on the twelve acre tract. The date of closing of the sale to FPI is in dispute. The real estate broker who arranged the transaction with FPI testified that he did not believe that the FPI

transaction was consummated until November of 1976. The trial court found that it was not concluded before the September 26, 1975, Brutsche offer was made.

Plaintiffs Marshall and Gate City brought this action to recover their share of the brokerage commission which they claim was earned when Gate City produced Neal Brutsche's second offer to buy on September 26, 1975. Plaintiffs maintained that Brutsche's second offer met the price and terms specified in the real estate broker's employment contract and, hence, they had fulfilled their obligation to find a buyer ready and willing to enter a deal on the sellers' terms. Marshall and Gate City sought to recover two-thirds of the 10% commission specified in the broker's contract.

The trial court found that a valid written real estate broker's contract was entered into between the named defendants and Marshall on July 29, 1975, and that an oral agreement establishing a three way split of the commission was made by Marshall, William Greaves & Associates, and Gate City in early September, 1975. The court ruled that plaintiffs Marshall and Gate City performed their duties under this contract by producing the second Brutsche offer, dated September 26, 1975, and that on this date no firm agreement had yet been reached by the sellers and FPI for sale and purchase of the property by those parties. The court found that there were no facts sufficient to establish a revocation or cancellation of the real estate broker's contract by the defendants prior to plaintiffs' performance and decreed that Gate City and Marshall should recover one-half of the 10% commission

specified in the contract. Attorney fees incurred in bringing this action were awarded to plaintiffs under a provision in the contract.

■ Defendants argue that the trial court's adoption of findings of fact and conclusions of law prepared by plaintiffs' counsel constitute reversible error. We have examined the record made at trial and find that the findings and conclusions adopted by the trial court are sufficient and supported by the evidence adduced at trial. The findings and conclusions drafted by counsel accurately reflect the ruling the trial court made at the close of the trial. We will not reverse this case for the drafting of new findings of fact and conclusions of law.[1]

■ Defendants contend that the real estate broker's employment contract made by defendants, Marshall, and William Greaves & Associates is not an enforceable contract under I.C. § 9–508[2] since Loewen, one of the co-owners of the property, did not sign it. At the time the contract was made the three co-owners were partners in the Geisler-Greaves-Loewen Development Company, a partnership formed for the purpose of developing the twelve acre Pocatello tract. The three partners had also entered the "Comprehensive Tenancy-in-Common Agreement" which provided that profits and losses arising from the property would be shared equally by the co-owners and that sale of the tract could be arranged by two of the three owners. Loewen signed this instrument. Loewen's uncontradicted testimony indicated that the decision to list the tract with Marshall and William Greaves &

---

1. We do not alter our strong admonitions to both bench and bar in this state, as expressed in *Matheson v. Harris,* 98 Idaho 758, 572 P.2d 861 (1977), and *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977), that I.R.C.P. 52(a) requires the trial court in a judge-tried case to exercise its independent judgment in the preparation of findings of fact and conclusions of law. The best procedure to follow if assistance of counsel is sought in the drafting of findings of fact and conclusions of law is, as noted in *Compton,* to request proposed findings and conclusions from both sides and to utilize these

in the drafting of the court's findings and conclusions.

2. "9–508. REAL ESTATE COMMISSION CONTRACTS TO BE IN WRITING.—No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative."

Associates was made at a partnership meeting attended by Greaves, Geisler and himself called for the purpose of discussing business matters relating to the defendants' co-tenancy. Both Geisler and Greaves signed the brokerage agreement on behalf of the partnership. The record supports the trial court's ruling that a valid real estate broker's employment contract was entered by "defendants, directly and through their partners and agents." We will not disturb this finding on appeal. Findings of fact made by the court shall not be set aside unless clearly erroneous. I.R.C.P. 52(a); *Ritter v. Standal,* 98 Idaho 446, 566 P.2d 769 (1977).

Defendants assert that even if a valid real estate broker's contract was made, it was cancelled before plaintiff performed it. The only evidence, however, which might support this contention is the September 23, 1975, letter from William Greaves to Marshall which informed Marshall that Greaves had sold his share of the co-tenancy to his partners, Geisler and Loewen. The letter noted that Geisler and Loewen "have been advised to cancel the listing." However, Geisler and Loewen never did contact Marshall to indicate an intent to cancel the listing. Greaves' letter was at best equivocal, and Greaves at trial stated his belief that that the contract was never cancelled. There is evidence to sustain the trial court's finding that the contract was not cancelled before plaintiffs performed it.

Defendants next argue that the trial court erred in ruling that plaintiffs performed the real estate broker's employment contract by obtaining the September 26, 1975, offer from Neil Brutsche. The second Brutsche offer met the sellers' asking price of $144,000, was accompanied by a $1,000 earnest money deposit, and contemplated complete cash payment on closing. The terms of the offer were more favorable than those sought by the sellers in the commission contract since Brutsche offered to make full cash payment at closing in lieu of the "substantial down payment" the sellers sought. This offer was obtained through Gate City which was associated with Marshall as a cooperating broker, as expressly permitted by the terms of the listing agreement. Brutsche's uncontradicted trial testimony indicated that he was ready, willing and able at all times, up to and including the moment he testified, to complete the transaction in accordance with the terms of his offer.

■ The contractual undertaking of the brokers was to obtain a "buyer ready and willing to enter into a deal for said price and terms." Upon presentation of an appropriate offer, the brokers performed the contract and were due their commission, regardless of whether an actual sale was concluded with the purchaser they had provided, unless the contract between the parties provided otherwise. The law in Idaho is that

"if a broker who has contracted with a prospective seller to procure a ready, willing and able purchaser for the seller's real property presents a buyer ready, willing and able to buy on terms listed by the seller with the broker or on other terms which the seller accepts, in the absence of special conditions in the broker's employment contract, the broker is entitled to his commission." *Rogers v. Hendrix,* 92 Idaho 141, 144, 438 P.2d 653, 656 (1968); *Garfield v. Tindall,* 98 Idaho 841, 573 P.2d 966 (1978).

Therefore, unless the contract provided otherwise, plaintiff became due its commission upon obtaining the Brutsche offer of September 26, 1975.

■ Defendants contend that plaintiff is barred recovery of his commission as a result of an exemption in the brokerage agreement which provided that the brokers would not receive a commission for obtaining an offer from Federal Projects, Inc. (FPI). They maintain that since FPI did eventually purchase a one-half interest in the parcel from Geisler, the exemption in the commission contract bars plaintiffs' recovery of a commission. Defendants misconstrue the effect of the exemption contained in this brokerage agreement. The testimony at trial indicated that prior to employing Marshall as the selling agent on

July 29, 1975, the owners of the parcel had engaged another broker, Nelson, to attempt to negotiate a sale of the property to FPI. The trial court found that the exemption in the brokerage commission contract with Marshall was intended to bar a commission to Marshall and William Greaves & Associates if an offer satisfying the terms of sellers' broker's employment contract with Nelson were acquired from FPI *before* Marshall produced a ready and willing purchaser. Such exemptions in broker's contracts are not uncommon and are typically read as the trial court read this one, *i. e.,* that when a brokerage contract gives a broker a right to a commission if an acceptable offer is obtained, with an exception from that right if another broker acquires the offer, a commission is earned by the broker first producing a ready and willing purchaser. *See Matas v. Green,* 3 Storey 473, 53 Del. 473, 171 A.2d 916 (Del.Super.Ct.1961); *cf. Alcorn v. Moore,* 386 S.W.2d 907 (Mo.App.1965) (where owner reserves the right to negotiate a sale of property himself, he owes no broker's commission if he obtains a ready and willing purchaser and so notifies the broker before the broker has performed). In light of the evidence presented, the trial court's interpretation of the exemption is a reasonable one.

The trial court found that on September 26, 1975, when the second Brutsche offer was obtained, no sale to FPI had been made, nor had any offer been received from FPI which met the sellers' demands. The evidence in the record readily supports this finding. We therefore affirm the trial court's ruling that plaintiffs are entitled to recover a commission for obtaining the September 26, 1975, Brutsche offer to purchase the property.

■ Under the July 29, 1975, real estate broker's employment contract, plaintiff Marshall and William Greaves & Associates were to earn a commission of 10% of the land's price upon either of them obtaining a buyer ready and willing to enter a deal under the terms specified. Marshall and Gate City in this action sought recovery of only two-thirds of the commission that was

contemplated in the contract. The trial court awarded them one-half of the 10% commission fee, and plaintiffs, on cross appeal, claim that it was error for the court not to award two-thirds of the fee. The listing contract is written such that Marshall and William Greaves & Associates undertook jointly to seek a buyer on behalf of the defendants. Upon the brokers' performance of the contract, defendant became liable for payment of the commission to Marshall and William Greaves & Associates as joint obligees. "[A]n obligation entered into by more than one person is presumed to be joint and . . . a several responsibility will not arise except by words of severance." 17 Am.Jur.2d Contracts § 298 (1964). Under the terms of the listing agreement the defendant owners became unconditionally liable for the entire commission upon satisfactory performance by either broker. An agreement between the brokers to divide the commission earned does not affect the contractual liability of the defendant owners to the brokers under the terms of this contract. Marshall and Gate City, in asserting the rights of the brokers under the contract, have proven that the brokers performed their obligations. Defendants under the contract are liable to the brokers for the entire 10% commission. However, Marshall and Gate City, by their complaint in this action, sought only two-thirds of the fee which it proved was earned. The trial court erred in awarding but one-half of the contractual commission.

■ The defendant appellants argue on appeal that plaintiff Gate City was not a party to the written real estate broker's employment contract, and that therefore I.C. § 9–508 bars recovery by Gate City from the defendants. However, the broker's contract contained the following provision:

"You may, if desired, secure the cooperation of any other broker, or group of brokers, in procuring a sale of said property. In the event that you, or any other brokers cooperating with you, shall find a buyer ready and willing to enter into a

deal for said price and terms, or such other terms and price as I may accept . . . I hereby agree to pay you in cash for your services a commission equal in amount to ten (10)% of said selling price."

We conclude that I.C. § 9–508 does not preclude recovery by Gate City under the circumstances of this case. Here, the contract upon which Marshall and Gate City seek recovery was "in writing, signed by the owner of such real estate," as required by the statute. The broker's contract specifically contemplated that the signatory brokers could employ other cooperating brokers in obtaining a purchaser for the property. The trial court found that a cooperating broker did in fact procure a buyer ready, willing and able to purchase the property on the terms set out in the brokerage agreement. Under the circumstances of this case, we conclude that Gate City was entitled to join in the action for recovery of the broker's fee. *Cf. Just's v. Arrington Constr. Co.,* 99 Idaho 462, 583 P.2d 997 (1978).

We reverse the judgment and remand the cause for entry of judgment in plaintiff respondents Marshall and Gate City's favor for two-thirds of the contractual commission. We have examined appellant defendants' remaining contentions and find there to be no basis for further modification of the judgment. We affirm the trial court's award of attorney fees and costs to plaintiff respondents and order the trial court to enter judgment for costs and attorney fees incurred by Marshall and Gate City on this appeal in accordance with the terms of the broker's contract upon which this action was brought.

SHEPARD, C. J., and McFADDEN, DONALDSON and BISTLINE, JJ., concur.