808 P.2d 1303

MAGIC VALLEY RADIOLOGY ASSOCIATES, P.A., Plaintiff–Respondent–Cross Appellant,

v.

PROFESSIONAL BUSINESS SERVICES, INC., a corporation, Defendant–Appellant–Cross Respondent.

No. 18040.

Supreme Court of Idaho,
Boise, May 1990 Term.

April 8, 1991.

---

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for plaintiff-respondent-

**560**

cross appellant. Lloyd J. Webb argued, Twin Falls.

Hepworth, Nungester & Lezamiz, Twin Falls, for defendant-appellant-cross respondent. John Hepworth argued, Twin Falls.

McDEVITT, Justice.

The detailed factual basis of the initial cause of action and trial is adequately set forth in *Davis v. Professional Business Services,* 109 Idaho 810, 712 P.2d 511 (1985). The issues arise from a dispute between a group of radiological physicians, Magic Valley Radiology Associates, P.A. ("Magic Valley"), and Professional Business Services, Inc. ("PBS"), which acted as a billing and collection agent for the accounts receivable of Magic Valley.

In 1980, Magic Valley exercised its right to terminate the business relationship between itself and Professional Business Services. Following termination, Magic Valley brought suit to obtain certain records from PBS so that Magic Valley could continue billing patients and additionally sought damages for reconstructing certain records not delivered by PBS, punitive damages, and attorney fees resulting from PBS's refusal to release certain "ledger cards" which PBS had developed containing all pertinent billing information for each patient.

PBS counterclaimed, seeking to recover a commission of 15% for all payments of accounts which Magic Valley received following its termination of PBS's contract for sums that had already been billed by PBS prior to termination of the contract.

Following the decision of the trial court, this Court heard the matter on appeal and affirmed in part, reversed in part, and remanded the case for further proceedings, directing the trial court to:

(1) Reinstate and permit proof on the counterclaim by PBS, which the trial court had earlier dismissed;

(2) Review its earlier disallowance of punitive damages to Magic Valley based upon this Court's just issued opinion in *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 665 P.2d 661 (1983); and

(3) Reconsider at the conclusion of the entire case as to whether or not attorney fees should be awarded.

Upon retrial, the trial court (Judge Granata sitting as trial judge due to the demise of Judge Ward who had decided the original action) granted recovery to PBS on its counterclaim for commissions owed; allowed punitive damages to Magic Valley for PBS's withholding of ledger cards; and granted attorney fees to Magic Valley pursuant to Idaho Rule of Civil Procedure 54(e)(1) on the basis that PBS had frivolously defended the issues of reconstruction costs of records as had been required by Magic Valley to carry out its billing procedures following PBS's withholding of the ledger cards and had unreasonably defended the punitive damage claims of Magic Valley.

On the original appeal, PBS, in lieu of a supersedeas and without objection by Magic Valley, posted a "Letter of Credit" to stay enforcement of Magic Valley's judgment for reconstruction costs. Following retrial, pursuant to post trial motions of Magic Valley, the trial court impressed that Letter of Credit with the total amount of the judgment, including punitive damages and attorney fees awards.

Following the retrial, PBS filed an appeal raising the following issues:

(1) The propriety of the granting by the trial court on retrial of punitive damages and attorney fees.

(2) The propriety of the award of attorney fees by the trial court upon retrial.

(3) The interest rate applicable to the judgment entered on retrial.

After the trial court's post trial order impressing the Letter of Credit with the entire judgment issued following retrial,

PBS filed an amended notice of appeal, raising the question of the appropriateness of the trial court impressing the Letter of Credit with the entire judgment following retrial.

Magic Valley filed a cross-appeal raising the question of the propriety of the trial court's award to PBS on its counterclaim.

## I.

## WAS THE AWARD OF PUNITIVE DAMAGES APPROPRIATE UNDER THE FACTS OF THIS CASE

■ PBS appeals the award of punitive damages by the trial court, contending that they were not appropriate under the facts presented in this case, in that the punitive damage claim against PBS is based upon the retention by PBS of "account summary" or "ledger cards" which were developed by PBS and required by PBS to substantiate its claims against Magic Valley for commissions due as Magic Valley's servicing agent. PBS further asserts that the trial judge who heard the cause initially determined that no punitive damages should be awarded.

The standard of review for this Court of an award of punitive damages is to determine whether the record contained substantial evidence to support the trial court's findings of circumstances which fall within the guidelines established in *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); and *Edmark Motors, Inc. v. Twin Cities Toyota, Inc.*, 111 Idaho 846, 727 P.2d 1274 (Ct.App.1986), *rev. denied* (1987).

In *Cheney*, that guideline was described as follows:

An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or dis-

regard for its likely consequences." ... The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence."

104 Idaho at 905, 665 P.2d at 669 (citations omitted).

In the instant case, the trial court on retrial applied the guidelines of *Cheney* and made the following Findings of Fact:

12. PBS's claim that it owned the ledger cards and was therefore not required to release those ledger cards, or copies thereof, to MVRA was irrational and groundless. These ledger cards, disassociated from the accounts to which they pertain, were totally worthless in PBS's hands.

13. PBS's retention of the ledger cards was done to accomplish two purposes: (1) extortion to compel immediate payment by MVRA of PBS's unliquidated and contested claim of $13,058.52; and (2) harassment and delay as to the assimilation and operation of MVRA's accounts by the new billing service, MDS.

14. As found in the first trial, and affirmed by the Idaho Supreme Court, PBS's retention of the ledger cards constituted a breach of contract, which directly and proximately caused damage to MVRA, for reconstruction costs, in the amount of $15,870.

15. PBS's breach of contract, and actions relative thereto, were malicious, deliberate, oppressive and willful, and constitute an extreme deviation from reasonable standards of conduct.

Based upon the foregoing Findings of Fact, the trial court on retrial made the following Conclusions of Law:

6. In withholding the ledger cards, while at the same time refusing to finish billing the outstanding accounts receivable, PBS acted with an extremely harmful state of mind, constituting an extreme deviation from reasonable stan-

dards of conduct, which was performed by PBS with an understanding of a disregard for its likely consequences, which justifies an award of punitive damages.

7. Although punitive damages are not favored in the law, the circumstances herein are most unusual and compelling; an appropriate case for the award of punitive damages against PBS.

8. The policy of awarding punitive damages is primarily to act as a deterrence not only to this defendant, but to others similarly situated, from engaging in like conduct. Such policy will be furthered by an award of punitive damages in this case. It is the obligation of this court to indicate to the defendant, as well as to others in like circumstances, that an intentional breach of contract which has the effect of interfering with another party's business, and wrongfully withholding another party's property for the purpose of forcing payment of a contested debt, are looked upon with extreme disfavor by the law. Merely being held accountable for damages as to the breach of contract will not provide an appropriate deterrence to the defendant, or to others similarly situated, to refrain from engaging in such willful, oppressive and deliberate misconduct in the future.

9. After an overall appraisal of the circumstances of this case and in the court's discretion, the plaintiff, MVRA, will be awarded punitive damages against PBS in the amount of $30,000.

Clearly, the trial court's Findings of Fact and Conclusions of Law fall within the guidelines pronounced by this Court in *Cheney* and subsequent cases. The problem presented in this case is that the trial court did not hear most of the evidence dealing with the issue of punitive damages and with the retention of the "account summaries" or "ledger cards," but had to rely upon the transcript and record in the earlier case wherein the trial court had granted Magic Valley relief based upon the same conduct on the theory of tort, which was reversed by this Court in *Davis v. Profes-*

*sional Business Services*, 109 Idaho 810, 712 P.2d 511 (1985). In *Davis*, this Court directed the trial court to review its decision in light of the decision rendered by this Court in *Cheney* within weeks after the trial judge entered the initial judgment in this case. *Cheney* overruled earlier decisions, particularly *Cox v. Stolworthy*, 94 Idaho 683, 496 P.2d 682 (1972), which had been interpreted to restrict punitive damage awards to cases involving deceptive business practices and certain enumerated courses of conduct that had been determined as harmful to the general public. Upon rehearing, the trial court had the matter submitted to it with little additional testimony.

At the initial trial, the trial court described the conduct of PBS in withholding the "account summaries" or "ledger cards" as follows:

PBS, under the fiction that the cards, disassociated from the accounts to which they pertain and totally worthless in PBS's hands, were somehow the property of PBS, persisted in an irrational and groundless claim. This claim apparently had two purposes. The immediate purpose appears to have been to serve as extortion to compel immediate payment of their contested, unenforceable claim for $13,058.52. The second purpose, and the one which worked, was to harass and delay the assimilation and operation of MVRA account handling by MDS.

\*    \*    \*    \*    \*    \*

The actions by PBS from May to December, 1980, were tortious relating to the unlawful detention of the ledger cards. The PBS by reason of the trust imposed in it prior to May 31, 1980, had an absolute duty to deliver MVRA's ledger cards to MVRA or PBS's successor. It flagrantly and tortiously violated its duty.

Although the findings of the initial trial court were based upon a theory of tort and tortious interference by PBS, the factual findings and the description of the conduct

of PBS by the initial trial court, clearly bring the conduct described within the guidelines set forth in *Cheney*, to wit: "that the act was performed by the defendant with the understanding of or disregard of its likely consequences." And, that "the defendant acted with an extremely harmful state of mind, whether that state of mind be termed 'malice, oppression, fraud or gross negligence.'"

This Court, in *Davis v. Professional Business Services*, held that the trial court could find that the complained of conduct on the part of PBS fell within the guidelines of *Cheney* and thereby constituted conduct meriting the award of punitive damages. This Court therefore, had passed on punitive damages as a possible holding based upon the evidence submitted in the initial trial.

In that the initial trial judge's Findings of Fact were sufficient to bring the conduct of PBS within the guidelines of *Cheney*, this same determination by the trial judge on retrial of this matter, based upon the same record, is likewise adequate to sustain the award of punitive damages. There is substantial evidence in the record upon which the trial court could make such an award.

We affirm the trial court's award of punitive damages.

## II.

### THE APPROPRIATENESS OF THE AWARD OF ATTORNEY FEES AGAINST PROFESSIONAL BUSINESS SERVICES, INC.

PBS appeals from the following order of the court on retrial:

Since the court has concluded that MVRA is the overall prevailing party herein, it further decides, pursuant to I.R.C.P. 54(e)(1), that MVRA is entitled to attorney fees, in that PBS defended the issues of reconstruction costs and punitive damages unreasonably and without foundation.

Consistent with I.R.C.P. 54(e)(3) and I.R.C.P. 54(b)(1)(B), this court will award a reasonable attorney fee to MVRA.... The basis for this amount being awarded is I.R.C.P. 54(e)(3)(A) and (B), as well as an award which relates to those issues upon which MVRA prevailed and an apportionment of costs and attorney fees, "in a fair and equitable manner after considering all the issues and claims involved in the actions and resultant judgment ... obtained." I.R.C.P. 54(d)(1)(B). (Citations omitted.)

The trial court cites I.R.C.P. 54(e)(1) as one basis for the award of attorney fees. Where as in this case there are multiple claims and multiple defenses, it is not appropriate to segregate those claims and defenses to determine which were or were not frivolously defended or pursued. The total defense of a party's proceedings must be unreasonable or frivolous.

In *Turner v. Willis*, 116 Idaho 682, 778 P.2d 804 (1989), this Court stated:

The frivolity and unreasonableness of a defense is not to be examined only in the context of trial proceedings. The entire course of the litigation will be taken into account.

*Id.* 116 Idaho at 685, 778 P.2d at 807.

In this case, where PBS prevailed on its cross-claim, defended against the claim of punitive damages, and obtained a reversal and remand by the Supreme Court of the initial judgment, we cannot hold that the total conduct of PBS in defending itself and asserting its claims was unreasonable or frivolous. PBS did raise triable issues.

To the extent that the trial court's award of attorney fees is based upon unreasonable or frivolous defense by PBS, we vacate the decision of the trial court.

## III.

### INTEREST RATE APPLICABLE TO THE JUDGMENTS ENTERED IN THIS CASE

At retrial Magic Valley successfully argued that since the cause of action upon

which it had prevailed at trial had "accrued" prior to July 1, 1987, that pursuant to the terms of I.C. § 28–22–104(2) and 1987 Session Laws § 18, c. 278, which provided that, "the provisions of this Act shall take effect on July 1, 1987, provided however, that section 1 through 11 shall apply only to causes of action which accrue on and after July 1, 1987 ...," it was entitled to 18% interest on the judgment.

The cited amendment to the Idaho Code contained in the 1987 Session Laws changes the interest rate from an effective rate of 18% to a variable rate computed by a formula set out in the statute. Magic Valley successfully sought the higher fixed rate in lieu of the variable rate computed by formula, and on this basis the trial court entered judgment. PBS appeals.

In construing legislative acts it is not the business of the court to deal in any subtle refinements of the legislation, but our duty is to ascertain, if possible, from a reading of the whole act, and amendments thereto, the purpose and intent of the legislature and give force and effect thereto. *State v. Groseclose,* 67 Idaho 71, 171 P.2d 863 (1946). Statutes must also be construed as a whole without separating one provision from another. *Sherwood & Roberts, Inc. v. Riplinger,* 103 Idaho 535, 650 P.2d 677 (1982); *Idaho Power Co. v. Idaho Pub. Utils. Comm'n,* 102 Idaho 744, 639 P.2d 442 (1981). The primary function of the court in construing a statute is to determine legislative intent and give effect thereto. *Carpenter v. Twin Falls County,* 107 Idaho 575, 691 P.2d 1190 (1984); *Umphrey v. Sprinkel,* 106 Idaho 700, 682 P.2d 1247 (1983).

A reading of the entire act before us clearly demonstrates that it was the legislature's express intention that the amendment to I.C. § 28–22–104 applied only to causes of action accruing on and after July 1, 1987. The fact that the legislature specifically included section seven which contained the new post-judgment interest formula within the first eleven sections of the act, clearly demonstrates its intent that the annual adjustment to post-judgment interest rates applied only to those causes of action accruing on and after July 1, 1987.

*Watkins v. Messenger,* 115 Idaho 386, 766 P.2d 1267 (1988).

The trial court correctly applied the appropriate judgment interest rate.

## IV.

## ON RETRIAL DID THE DISTRICT COURT ERR BY IMPRESSING THE "LETTER OF CREDIT" WITH THE "THIRD AMENDED JUDGMENT"

■ Following the retrial on August 18, 1989, Magic Valley filed a motion requesting the trial court to issue an "Order to Show Cause" ordering PBS and Twin Falls Bank & Trust Company (the "Bank") to appear before the trial court and show cause:

(1) Why the trial court should not determine the extent to which the "Third Amended Judgment" was payable from the proceeds of the "Letter of Credit" issued by the Bank;

(2) Why the trial court should not enter judgment against the Bank and issue a writ of execution against the assets of the Bank to obtain the amount determined in (1) above;

(3) In the alternative, why the Bank should not be directed to remit to Magic Valley in the amount determined by the court in (1) above.

(4) Or, why the clerk of the court should not issue a draft, in an amount determined by the court pursuant to (1) above, and present the same to the Bank for payment.

Magic Valley additionally sought attorney fees against the Bank.

The Bank appeared specially, solely for the purpose of responding to the Order to Show Cause issued by the court pursuant to Magic Valley's motion and asserted:

(1) That the Bank was not a party to the pending action and the court had no jurisdiction to enter judgment against the Bank or award fees against the Bank.

(2) That the Letter of Credit, pursuant to its terms, expired on December 30, 1985, without the court having drawn against it. (Additionally, the Bank filed an affidavit of one of its officers asserting that the Letter of Credit contained an expiration date which was December 30, 1985, and that under the terms of that Letter of Credit the words "mature" and "expire" as contained in that Letter of Credit were synonymous.)

(3) The Bank never issued a "Letter of Credit" without an expiration date.

Following argument on the relief sought in the motion and the response to the Order to Show Cause, the trial court, on October 10, 1989, issued its "Opinion Re: Order to Show Cause and Execution of Writ." That opinion directed:

(1) That the "Letter of Credit" to the dollar limit amount of the "Letter of Credit," which had been posted by PBS following the initial trial in lieu of supersedeas, should be paid over to Magic Valley to satisfy the "Third Amended Judgment;"

(2) That the "Letter of Credit" was impressed with the judgment entered on the first trial and affirmed in the first appeal, as well as a judgment for punitive damages and attorney fees entered by the court following retrial.

The court denied subsequent motions by PBS for reconsideration and motion to stay execution pending appeal, and PBS filed its motion with this Court requesting leave to amend its notice of appeal to include the issue raised by the trial court's impressing the "Letter of Credit" with the "Third Amended Judgment." This Court granted that motion.

The threshold question that must be determined is whether or not the "Letter of Credit" expired on December 30, 1985.

The applicable provisions of the Letter of Credit are as follows:

(1) "Available by your draft drawn upon final disposition of the present appeal, ... such disposition illustrated by a copy of the Remittitur of the Idaho Supreme Court and the final Judgment in the District Court above named, if any, specifying the amount of said Judgment, together with costs not to exceed the sum herein specified."

(2) "This Letter of Credit shall mature December 30, 1985."

(3) "It is agreed that, in the event the Letter is not sooner drawn upon, the Clerk of the District Court may, on December 30, 1985, draw a draft consistent with the Letter, payable to Court Trust, for the proceeds thereof to abide the disposition of the specified action."

In construing a written instrument this Court must consider it as a whole and give meaning to all the provisions of the writing to the extent possible. *West v. Brenner,* 88 Idaho 44, 396 P.2d 115 (1964); *Beal v. Mars Larsen Ranch Corp.,* 99 Idaho 662, 586 P.2d 1378 (1978); *Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980); *Wing v. Martin,* 107 Idaho 267, 688 P.2d 1172 (1984); *Spencer–Steed v. Spencer,* 115 Idaho 338, 766 P.2d 1219 (1988). The "Letter of Credit" issued by the Twin Falls Bank & Trust Company, when read in toto giving plain meaning to the words contained therein, leads us to the conclusion that the Letter of Credit matured or expired on December 30, 1985, and was not drawn upon on or prior to that date, and is not now available to the court or the parties to be impressed with the "Third Amended Judgment."

Paragraph (1) above stated the general terms of the availability of the proceeds of the Letter of Credit contemplating a result to the case involving the first appeal to this Court from the initial trial court judgment on or before December 30, 1985.

The paragraph of the Letter of Credit quoted in paragraph (2) above stated a

"maturity" date for the Letter of Credit which, if to have any meaning at all, must be construed to mean that from and after that date that credit facility was no longer available to be drawn upon. This language, to give any meaning, can only have this construction.

The last provision quoted in paragraph (3) above provided a mechanism for the court, acting through the clerk of the court, to draw down the funds represented by the credit facility that was denoted "Letter of Credit" and hold those funds by the court for disposition of the judgment appealed from initially if the disposition thereof was beyond the period ending December 30, 1985. Again, this provision permitting the court, acting through the clerk, to draw the funds represented by the "Letter of Credit" on its "maturity" or "expiration" date is the only interpretation of that paragraph when read in conjunction with the previous provisions that would give meaning to this and the remaining provisions of the "Letter of Credit."

We determine that the "Letter of Credit" did, pursuant to its terms, mature or expire on December 30, 1985, and was not available to the court after that date to be impressed with the "Third Amended Judgment" or any other sum.

## V.

MAGIC VALLEY CROSS–APPEAL ARGUES THAT THE AWARD TO PBS OF COMMISSION PAYMENTS ON RETRIAL WAS ERROR

■ On retrial, the conclusions of law reached by the court as to the contract claim of PBS, which had been reinstated by this Court on the initial appeal, were as follows:

1. Upon termination of an ongoing contractual relationship where benefits are payable, but have not yet been paid to one of the contracting parties, that contracting party is entitled to payment of the amount that would have been received, but for the termination of the contract, less what it was saved by not having to complete performance of the contract. In this case, PBS will be paid a 15% commission as to payments received by MVRA from accounts billed by PBS, payments received through August, 1980. PBS will also receive a sum equal to 15% of 75% of the amounts paid to MVRA, as to accounts billed by PBS, where payments were received beginning September 1, 1980.

2. The contract between MVRA and PBS was severable.

3. PBS will be awarded, upon its Amended Counterclaim, the amount of $10,539.52.

Magic Valley asserts that the contract between PBS and Magic Valley was nonseverable and that PBS breached the contract in failing to perform any servicing functions on the Magic Valley accounts from and after the notice by Magic Valley that it was terminating the agreement.

The trial court on retrial, specifically held that the contract was severable and that PBS was entitled to commissions as computed by the Court.

The standard of review by this Court of fact findings made by a trial court sitting without a jury is a "clearly erroneous" standard. *Marshall Bros., Inc. v. Geisler,* 99 Idaho 734, 588 P.2d 933 (1978); *Cougar Bay Co. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979). This Court has held that findings of fact are not "clearly erroneous" if they are supported by substantial competent, although conflicting, evidence in the record. *Cougar Bay Co., Inc.,* 100 Idaho at 383, 597 P.2d at 1073; *Treasure Valley Plumbing v. Earth Resources Co., Inc.,* 115 Idaho 373, 766 P.2d 1254 (Ct.App.1988) (*no pet. rev. filed*); *Bischoff v. Quong–Watkins Properties,* 113 Idaho 826, 748 P.2d 410 (Ct.App.1987) (*no pet. rev. filed*).

The issue of severability of an agreement has been frequently addressed by this Court and the basic rule set down in *Morgan v. Firestone Tire & Rubber Co.,* 68

Idaho 506, 201 P.2d 976 (1948), is as follows:

> Whether a contract is entire or severable depends on the intention of the parties which is to be ascertained and determined, when the contract is unambiguous, from the subject matter of the agreement and the language used therein, taking the agreement as a whole and not its separate parts without regard to one another.

*Morgan*, 68 Idaho at 513, 201 P.2d at 979.

In the *Morgan* case, and subsequently in *Lewis v. Fletcher*, 101 Idaho 530, 617 P.2d 834 (1980), this Court specifically referenced its adoption of Professor Williston's test for determining the divisibility or severability of contracts.

> "The essential test to determine whether a number of promises constitute one contract or more than one is simple. It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." 6 Williston on Contracts § 863 at 275 (3d ed. 1962).

> *See Krasselt v. Koester*, 99 Idaho 124, 578 P.2d 240 (1978); *Vance v. Connell*, 96 Idaho 417, 529 P.2d 1289 (1974); *Morgan v. Firestone Tire & Rubber Co.*, 68 Idaho 506, 201 P.2d 976 (1948).

*Lewis*, 101 Idaho at 531, 617 P.2d at 835.

This is essentially a question of fact to be determined by the trier of fact.

In reviewing the record, including the trial court's findings of fact and conclusions of law, we hold that the findings and conclusions of the trial court are amply supported by substantial and competent evidence as to the severability of the agreement between the parties and that holding is affirmed.

This Court affirms the award of punitive damages, affirms the judgment on the awarded counterclaim awarded PBS, and affirms the determination of the applicable interest rate. This Court vacates the award of attorney fees, and reverses the impression of the "Letter of Credit" with the third amended judgment. This matter is remanded for further proceedings in accord with this opinion.

No fees or costs on appeal.

JOHNSON and BOYLE, JJ., and REINHARDT, J. Pro Tem., concur.

BAKES, Chief Justice, concurring specially:

I concur in Parts II, III, IV and V. I concur in the result in Part I dealing with punitive damages. Judge Ward conducted the original trial and was the only judge to observe the demeanor of the witnesses. He denied the award of punitive damages. On appeal, the case was reversed in part and remanded for further proceedings. However, Judge Ward had died, and the case was assigned to a new district judge who, without hearing any new evidence on the punitive damages issue, reviewed the original trial transcript and came to a different conclusion. We have before us the same written record which the district court on remand had before it. That record demonstrates that PBS created the ledger cards in question, and further that there was no express provision in the contract requiring PBS to deliver those cards to MVRA at the time of the termination of the contract. Any such requirement was, at best, implied, just as was MVRA's obligation to pay PBS the $10,539.52 which the district court on remand held was owing from MVRA to PBS on its counterclaim, and which the Court today affirms in Part V.

While the evidence in this case makes a slightly better showing for the imposition of punitive damages than the evidence in *Garnett v. Transamerica*, 118 Idaho 769, 800 P.2d 656 (1990), I question whether, in either case, the facts justify a conclusion that the conduct of either defendant was "an extreme deviation from reasonable

standards of conduct, and ... the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence.' " *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983).