Joseph A. AMATO, Plaintiff,

v.

The UNITED STATES of America; Angeline A. King, a widow; Richard S. Lavin, a single person; Judy A. Wood, a.k.a. Judy A. Lavin; and Joyce Jorgenson; Home Federal Savings & Loan Association of Nampa, a corporation, Defendants.

Joyce Jorgenson Cross-plaintiff,

v.

Angeline A. King, Richard S. Lavin, and Judy A. Wood, Cross-defendants.

No. 94–0553–S–BLW.

United States District Court, D. Idaho.

Feb. 5, 1999.

Richard E. Weston, Weston & Richardson, Boise, ID, for Joseph A. Amato.

Richard R. Ward, William T. Murphy, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

Peter J. Boyd, Boise, ID, for Angeline A. King, Richard S. Lavin.

William F. Gigray, Jr., Gigray Miller & Downen, Caldwell, ID, for Judy A. Wood.

Richard B. Eismann, Eismann Law Offices, Nampa, ID, for Joyce Jorgensen.

MEMORANDUM DECISION
AND ORDER

WINMILL, District Judge.

### I. Introduction

The Court has before it the United States' Motion for Reconsideration, in which Judy Wood joins. Also before the Court is Joyce Jorgenson's Motion for

Summary Judgment against Joseph Amato regarding his claim against her. The Court will consider each in turn.

## II. The United States' Motion for Reconsideration

Although the Federal Rules of Civil Procedure do not formally recognize a litigant's right to file a motion for reconsideration, the Court has the inherent power to reconsider its earlier decisions at any time prior to the entry of final judgment. In this case, reconsideration seems appropriate, because in its March 27, 1998, Memorandum Decision, the Court relied on statements allegedly made by defendant Judy Wood and found that an agreement existed, between Wood and the other joint tenants, to sell the property to Jorgenson. It appears that the United States did not expect the Court to confront the issue of the existence of an agreement, and has now, in its reconsideration motion, put forth contrary evidence on that issue. Because the Court previously granted summary judgment against the United States, based largely on its finding that an agreement existed between Wood, Lavin, and the Kings to sell the property to Jorgenson, the Court will consider whether the recently-submitted evidence creates a genuine issue of material fact so as to preclude the entry of summary judgment against the United States.

■ In its prior Memorandum Decision, the Court found that Jorgenson acquired the property that is the subject of this action from Wood, Lavin and the Kings. *See* Memorandum Decision and Order, Docket No. 59, March 27, 1998, p. 17. This transfer was made by operation of a real estate contract signed by Jorgenson, Lavin, and the Kings. While Wood had not signed the contract, the Court found that her interest was transferred as part of an oral agreement to its terms. Such an oral agreement would normally be unenforceable under the statute of frauds. However, under the doctrine of partial performance, when an agreement to convey an interest in real estate is not reduced to writing, it may nevertheless be enforced when the purchaser has partly performed. *See Bear Island Water Ass'n v. Brown,* 125 Idaho 717, 874 P.2d 528, 533 (1994).

The doctrine of partial performance is predicated on the existence of an unwritten agreement. In the Memorandum Decision the Court found, based upon sworn statements of Richard Lavin and Angela King, that Wood had orally agreed to transfer her interest in the subject property to Jorgenson. *See* Memorandum Decision at p. 16. Since Jorgenson appeared to have acted upon such an oral agreement in occupying and making improvements on the subject property, the Court concluded that Wood was bound by such an agreement, even in the absence of her signature on a written document. *Id.*

In its motion for reconsideration, the United States disputes the above reasoning on two grounds. First, the United States contends that the Court cannot consider the statements of Lavin and King in ruling on a motion for summary judgment, since those statements contain hearsay as to what Ms. Wood told them. Absent these statements, the United States asserts there is no evidence of the existence of an oral agreement. Second, the United States contends that the deposition of Judy Wood raises at least a genuine issue of material fact as to whether an oral agreement ever existed.

The Court based its finding of the existence of an oral contract on statements of Richard Lavin and Angela King. *See* Memorandum Decision at p. 16. In particular, King stated in her deposition that Wood was delighted with the terms of the proposed contract with Jorgenson, and was in favor of selling the property. The United States' position, however, is that this portion of King's deposition is inadmissable hearsay that cannot be considered by the Court in evaluating a motion for summary judgment. *See Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1998).

 Jorgenson contends that such evidence is admissible as a declaration by a party-opponent. *See* Fed.R.Evid. 801(d)(2). However, as the United States points out in its reply, this is not technically correct since Wood, who allegedly made the assertions to King, is not the party opponent with regard to the pending motion. However, out-of-court statements of parties to litigation are non-hearsay, admissible against other parties to litigation besides the party making the statement. *See Jolley v. Clay,* 103 Idaho 171, 646 P.2d 413, 417 (1982) ("The out-of-court statements of parties to litigation are, and always have been, admissible, whether classified as non-hearsay or as an exception to the hearsay rule.") Furthermore, the United States did not move to strike the pertinent deposition testimony of King. The failure to move to strike an affidavit containing inadmissable statements constitutes a waiver of any objection to that affidavit and permits the Court to consider those statements. *See Gasaway v. Northwestern,* 26 F.3d 957 (9th Cir.1994) ("Gasaway made no objection that the Westphal affidavits contain 'medical conclusions and opinions,' nor did she move to strike the affidavits on this ground. The objection is therefore waived."). Thus, the Court validly relied on the pertinent deposition testimony of King.

The United States also contends that the deposition testimony of Judy Wood raises a genuine issue of material fact as to whether she entered into an oral agreement for the sale of the subject property. Specifically, the United States notes portions of Wood's deposition where she states that she objected to the contract because the price was too low. *See* Dep. of Judy Wood, November 22, 1996, attached as exhibit 3 to Declaration of Richard Ward, Docket No. 25, pp. 29–30. Furthermore, when she received a copy of the real estate contract, Wood testified that she did not respond in any way. *Id.* at 28–29. Finally, in her responses to discovery requests promulgated by the United States, Wood claimed that she still owned a one-quarter interest in the subject property.

In response, Jorgenson, Lavin and the Kings offer the conversations Wood had with Angela King regarding the sale of the property, and King's assertion that Wood was delighted in the terms of the proposed contract with Jorgenson, and was in favor of selling the property. *Id.* at 19–24. In addition, there is no allegation by Wood that, during their conversations, Wood ever informed King that she did not intend to sell the property to Jorgenson. *Id.* Finally, during her deposition, Wood indicated a familiarity with the terms of the contract, particularly those regarding improvements to the property, and suggested that she intended to hold Jorgenson to the terms of the contract. *Id.* at 43–44.

 It is axiomatic, that "[f]ormation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract" and that such "manifestation takes the form of an offer and acceptance." *Inland Title Co. v. Comstock,* 116 Idaho 701, 779 P.2d 15, 17 (1989). Generally, the acceptance of an offer "may be wholly or partly by written or spoken words or by other acts or by failure to act." Restatement (Second) of Contracts: Conduct as Manifestation of Assent § 19(1) (1979). Ordinarily, silence cannot be taken as manifestation of assent to an offer. *See* Restatement (Second) of Contracts: Acceptance by Silence or Exercise of Dominion § 69 (1979). However, when silence follows words that are indicative of manifestation assent, any offeror would reasonably conclude that the silence constitutes confirmation of the manifestation of intent. Here, it is possible that Wood's conduct and silence could be construed as an acceptance of the written contract terms but, given the additional evidence which the United States has offered, the issue is far from certain. Accordingly, after construing the facts and inferences in the light most favorable to the non-moving party, as the Court is required to

do, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), it is clear that a genuine issue of material fact exists which precludes the Court's grant of summary judgment in favor of Jorgenson and against the United States. Therefore, the Court will withdraw that portion of its prior Memorandum Decision granting Jorgenson's Motion for Summary Judgment. All other orders within the prior Memorandum Decision will remain as previously written.

█ Finally, with regard to the issue of severability of the contract, the Court will not address that issue at this time. The issue of whether a contract is severable depends on the intent of the parties and the language of the contract. *Magic Valley Radiology Associates, P.A. v. Professional Business Services, Inc.,* 119 Idaho 558, 566–67, 808 P.2d 1303, 1311–12 (1991). The *Magic Valley* court stated:

> Whether a contract is entire or severable depends on the intention of the parties which is to be ascertained and determined, when the contract is unambiguous, from the subject matter of the agreement and the language used therein, taking the agreement as a whole and not its separate parts without regard to one another.

*Magic Valley,* 119 Idaho at 566–67, 808 P.2d at 1311–12, citing *Morgan v. Firestone Tire & Rubber Co.,* 68 Idaho 506, 201 P.2d 976 (1948). The *Magic Valley* court stated: "This is essentially a question of fact to be determined by the trier of fact." *Id.* As the intent of the parties is a question for the trier of fact, the Court cannot resolve the issue of the severability of the contract at this time.

### III. Jorgenson's Motion for Summary Judgment

Joyce Jorgenson seeks summary judgment on her amended complaint against the Plaintiff, Joseph Amato, to establish that her interest in the subject property

has priority over Amato's interest. A brief review of the record reveals that on January 15, 1988, Amato received a judgment against Richard Lavin, and recorded a judgment lien against the subject property. On January 27, 1989, Jorgenson entered into an agreement with Walter and Angeline King, and Richard Lavin for the purchase of this real estate.[1] Jorgenson's representative has occupied the property from that date to the present. On January 7, 1993, Amato renewed his judgment, however he did not record the renewed judgment for purposes of securing a judgment lien until May 18, 1994.

Jorgenson contends that Amato's priority date for his interest in the subject real estate is the date he recorded the renewed judgment, May 18, 1994. Therefore, Jorgenson, who took possession of the property by way of agreement on January 27, 1989, has a superior interest in the property. Amato refutes this position, contending that since Jorgenson had actual and constructive notice of Amato's interest in the real estate when she took possession on January 27, 1989, his failure to record the renewed judgment until May 18, 1994, is irrelevant, and his interest is superior.

█ Amato's argument, that since Jorgenson had actual and constructive notice of Amato's original judgment lien, her interest should be inferior to his, parallels a similar argument that he raised before this Court previously in seeking summary judgment against the United States. The Court rejected the argument and denied his motion for summary judgment against the United States there, and follows that same reasoning here. *See* Memorandum Decision and Order, March 27, 1998, p. 10. There is no question that Amato's interest in the real estate, by virtue of the judgment lien of January 15, 1988, was superior to Jorgenson's interest at the time Jorgenson took possession the property. However, Amato failed to record the re-

---

**1.** The existence of this agreement is a disputed matter which the Court has previously considered in this and prior decisions. For the purpose of analyzing the dispute between Jorgenson and Amato, the Court will assume such agreement existed and was in effect.

newed judgment in a timely manner, Had Jorgenson checked the County property records between January 16, 1993 and May 18, 1994, Jorgenson would have had no indication that Amato's original judgment had been renewed. The only conclusion that Jorgenson could draw from a check of the County records would have been that the judgment lien had lapsed. Thus, it cannot be said that, after January 15, 1993, Jorgenson had actual notice of Amato's renewed claim.

In addition, there is a clear statutory mandate that, in order for a renewed judgment lien to be acquired and perfected, the renewed judgment must be recorded. *See* Idaho Code § 10–1110. A lien simply does not exist if the judgment, or renewed judgment, has not been recorded. *Id.* It follows then that Jorgenson could not have actual notice of a judgment lien that did not exist.

Furthermore, this Court has previously held that a renewed judgment does not continue or extend a judgment lien unless, and until, it is recorded in the manner prescribed by Idaho Code § 10–1110. *See* Memorandum Decision and Order, March 27, 1998, pp. 8–10. This reasoning is supported by longstanding Idaho case law which holds, "that a judgment lien lapses, under the statute creating it, at the expiration of five years from the date it is docketed." *Platts v. Pacific First Federal Savings & Loan Ass'n of Tacoma,* 62 Idaho 340, 111 P.2d 1093, 1096 (1941). Since Amato's renewed judgment lien was allowed to lapse, it was not re-perfected until May 18, 1994, when it was appropriately recorded. It is that date which then becomes the priority date for his interest in the subject property.

Summary judgment is appropriate in the absence of any genuine issue of material fact that would preclude judgment as a

matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the present case, there is no dispute between Amato and Jorgenson with regard to the pertinent facts.[2] Thus, consistent with the above memorandum decision, the Court will grant summary judgment in favor of Jorgenson against Amato and find that her interest in the subject property is superior.

## IV. ORDER

Wherefore, in accordance with the above memorandum opinion,

IT IS HEREBY ORDERED that the United States' Motion for Reconsideration (Docket No. 61) shall be, and the same is hereby, GRANTED, and Cross–Claimant Joyce Jorgenson's Motion for Summary Judgment against the United States (Docket No. 33), which was previously granted, shall be DENIED.

IT IS FURTHER ORDERED that Defendant Joyce Jorgenson Motion for Summary Judgment against Joseph Amato (Docket No. 72) shall be GRANTED.

---

**2.** In his Statement of Undisputed Facts, Amato concedes that he has no objection to Jorgenson's Statement of Undisputed Facts except for the statement that Jorgenson's father, who has possessed the subject property in behalf of Jorgenson, was and is a licensed real estate agent. However, as the Court has

previously explained, this does not raise a genuine issue of material fact sufficient to preclude summary judgment since that factual assertion was raised to support Amato's contention of actual notice, an issue irrelevant to the Court's determination here.